**PATTERSON RECALL COMMITTEE, INC., Petitioner–Appellant and Cross–Appellee,**

v.

**William N. PATTERSON, Respondent–Appellee and Cross–Appellant,**

and

**Office of Administrative Courts, Appellee.**

No. 08CA0662.

Colorado Court of Appeals, Div. II.

April 16, 2009.

Ireland, Stapleton, Pryor & Pascoe, P.C., Mark E. Haynes, Stefania C. Scott, Denver, Colorado, for Petitioner–Appellant and Cross–Appellee.

Reed & Gilbert, Michael T. Gilbert, Ouray, Colorado, for Respondent–Appellee and Cross–Appellant.

John W. Suthers, Attorney General, Denver, Colorado, for Appellee.

Opinion by Judge CASEBOLT.

In this action involving the Fair Campaign Practices Act (Act), §§ 1–45–101 to –118, C.R.S.2008, and the Campaign and Political Finance Amendment, Colo. Const. art. XXVIII (the Amendment), respondent, Patterson Recall Committee, Inc. (Committee), appeals the judgment entered by an administrative law judge (ALJ) in favor of complainant, William N. Patterson, finding the Committee had violated the Act and the Amendment and imposing a civil penalty. Patterson cross-appeals, contending the ALJ erred in determining that there is a "good faith" exception to the sanction provisions of the Act and the Amendment. We affirm.

The Committee was formed to support an election to recall complainant, a Montrose County Commissioner. On June 27, 2007, the Committee registered as an issue committee with the Montrose County Clerk & Recorder (Clerk) through the Colorado Secretary of State website. An issue committee, as defined in section 2(10)(a)(I) of the Amendment, must timely report contributions and expenditures under sections 1–45–109(1) and 1–45–108(6), C.R.S.2008.

The Committee filed three reports for the periods of June 27 to July 6, 2007; July 7 to August 6, 2007; and August 7 to September 14, 2007, the last being filed on September 10, 2007. However, on August 14, 2007, the Clerk determined that the Committee had not gathered sufficient signatures to trigger a recall election. The Committee filed a protest, but the Clerk upheld the determination on September 27, 2007.

Patterson then filed a complaint with the Colorado Secretary of State, asserting that the Committee had violated campaign finance laws by (1) failing to disclose all contributions and expenditures from May 2007 through January 2008; (2) failing to file reports of contributions and expenditures after September 10, 2007; and (3) failing to establish a

separate bank account. The Committee asserted in response that it had no obligation to file any disclosure reports once the Clerk determined that there would not be a recall election. Additionally, it asserted that it had complied with all the registration and reporting requirements. The Secretary referred the matter to an ALJ, who held an evidentiary hearing.

The ALJ determined that she had jurisdiction to conduct a hearing and to impose appropriate sanctions pursuant to section 9(2)(a) of the Amendment. The ALJ found that the Committee was required to file reports of contributions or expenditures for the months of October through December 2007, and January 2008, but that it had failed to do so. The ALJ concluded that, under the plain language of section 2(10) of the Amendment, an unsuccessful petition drive did not change the Committee's status as an issue committee and, under section 2(10)(c), the Committee was considered open and active until it filed a termination letter or the Clerk took action to close it, neither of which had occurred here. Therefore, the Committee was not relieved of its obligation to file reports of contributions and expenditures. Despite finding a violation, the ALJ subsequently determined not to impose a civil penalty in connection with that violation because the Committee in good faith believed that its reporting obligations ceased when the Clerk determined there would not be a recall election.

In addition, the ALJ determined that the Committee had failed to disclose all of its contributions and expenditures, specifically, those for legal services and printing costs, in the reports that it had filed. The ALJ also determined that the Committee had failed to set up a separate bank account. The ALJ imposed a penalty of $9,750 for these violations, calculated at $50 per day from July 12, 2007, the date of the committee's first report, to January 23, 2008, the date of the hearing before the ALJ. This appeal and cross-appeal ensued.

## I. Authority for Penalties

The Committee acknowledges that the ALJ had jurisdiction under section 9(2)(a) of the Amendment to consider the complaint and render a decision concerning the asserted violations. It contends, however, that the Amendment does not grant an ALJ the authority to impose a penalty. It asserts that section 10(2)(a) of the Amendment provides that only "the appropriate officer" may impose a penalty of $50 per day for each day after a required statement is not filed on the day it is due. The quoted term is defined in section 2(1) of the Amendment as "the individual with whom a[n] ... issue committee must file pursuant to section 1–45–109(1), C.R.S." The Committee correctly notes that it was required to file its reports with the Clerk, and it argues that the Clerk, not the ALJ, was the only "appropriate officer" authorized to impose a penalty upon it. For additional support, the Committee notes that the ALJ stated, in her decision, that she was not "the appropriate officer" for purposes of section 10(2)(a) of the Amendment. Construing the Amendment and the Act, we conclude there are two separate and independent procedures for addressing violations, and that the Committee's argument incorrectly conflates those two procedures.

### A. Standard of Review and Principles of Construction

We review de novo the interpretation of a constitutional provision. We seek to ascertain intent, starting with the plain language of the provision and giving the words their ordinary meaning. *Colo. Educ. Ass'n v. Rutt*, 184 P.3d 65, 80 (Colo.2008); *Colo. Citizens for Ethics in Gov't v. Committee for American Dream*, 187 P.3d 1207, 1215 (Colo. App.2008) *(CCEG); Rocky Mountain Animal Def. v. Colo. Div. of Wildlife*, 100 P.3d 508, 513–14 (Colo.App.2004).

If that intent is not clear from the language of the Amendment, we should construe the Amendment in light of the objective sought to be achieved and the mischief sought to be avoided by the measure. *Rocky Mountain Animal Def.*, 100 P.3d at 514. We should consider the Amendment as a whole and, when possible, adopt an interpretation of the language that harmonizes different constitutional provisions, rather than one that would create a conflict between them. *Id.*

We must favor a construction of a constitutional amendment that will render every word operative, rather than one that may make some words meaningless or nugatory. We should avoid an unreasonable interpretation or one that produces an absurd result. We are also guided by general principles of statutory interpretation and aids in construction. *Id.*

### B. Application

The Amendment creates two types of enforcement proceedings. The first type is initiated by a citizen and the second is initiated by an enforcing agency. Section 9(2)(a) of the Amendment, which describes the citizen-initiated proceeding, provides, in pertinent part:

> Any person who believes that a violation of section 3, section 4, section 5, section 6, section 7, or section 9(1)(e) of this article, or of sections 1–45–108, 1–45–114, 1–45–115, or 1–45–117, C.R.S.... has occurred may file a written complaint with the secretary of state.... The secretary of state shall refer the complaint to an administrative law judge.... The [ALJ] shall hold a hearing ... and shall render a decision.... If the administrative law judge determines that such violation has occurred, such decision shall include any appropriate order, sanction, or relief authorized by this article. The decision of the administrative law judge shall be final and subject to review by the court of appeals ...

Thus, *any person* who believes that a specified violation has occurred may file a written complaint with the secretary of state, which triggers the referral of the matter to an ALJ. The ALJ is then expressly given jurisdiction and authority to hear and decide the merits of the complaint and impose an appropriate order, sanction, or relief, and either side may appeal to this court. The secretary may enforce the decision, or the person initiating the complaint may privately enforce the decision in the district court if the secretary does not timely act.

The second type of proceeding, which is initiated by an enforcing agency, is described in section 10(2) of the Amendment, which states, as pertinent here:

> (a) The appropriate officer shall impose a penalty of fifty dollars per day for each day that a statement or other information required to be filed pursuant to section 5, section 6, or section 7 of this article, or sections 1–45–108, 1–45–109 or 1–45–110, C.R.S., or any successor sections, is not filed by the close of business on the day due. Upon imposition of a penalty pursuant to this subsection (2), the appropriate officer shall send the person upon whom the penalty is being imposed proper notification by certified mail of the imposition of the penalty....

> (b) (I) Any person required to file a report with the secretary of state and upon whom a penalty has been imposed pursuant to this subsection (2) may appeal such penalty by filing a written appeal with the secretary of state no later than thirty days after the date on which notification of the imposition of the penalty was mailed to such person's last known address.... Except as provided in paragraph (c) of this subsection (2), the secretary shall refer the appeal to an administrative law judge.... [The ALJ shall] set aside or reduce the penalty upon a showing of good cause.... The decision of the administrative law judge shall be final and subject to review by the court of appeals....

> (c) Upon receipt by the secretary of state of an appeal pursuant to paragraph (b) of this subsection (2), the secretary shall set aside or reduce the penalty upon a showing of good cause.

Accordingly, the "appropriate officer" with whom required reports must be filed is authorized to impose a penalty for failure timely to comply with the filing requirements. If the penalized person or entity is required to file a report with the secretary of state, the penalized person or entity may appeal that determination to the secretary of state, *see Sullivan v. Bucknam*, 140 P.3d 330, 331 (Colo.App.2006), who may reduce or set aside the penalty for good cause or refer the matter to an ALJ. The ALJ is authorized to conduct a hearing, and may also set aside or reduce the penalty upon a showing of good

cause. That determination may then be appealed to this court.

■ Hence, there are two separate and independent sections of the Amendment, each of which deals with different obligations set forth in the Amendment and the Act (although there is some overlap), and each of which provides a different method of enforcement by a different entity. Section 9 is applicable when "any person" files a complaint alleging violations of certain provisions and allows the ALJ to sanction violations, and section 10 applies when "the appropriate officer" determines to sanction a violation when a report is not filed by the close of business on the day due.

Contrary to the Committee's contention, we do not perceive that the procedures and authority specified in section 9 are modified by the procedures specified by and powers granted to "the appropriate officer" in section 10. This interpretation gives effect to every word of the Amendment and harmonizes the two sections. *See CCEG*, 187 P.3d at 1215. Thus, an ALJ, proceeding under a privately-filed complaint under section 9 need not be "the appropriate officer" described in section 10 to have the authority to impose a sanction.

Rule 6 of the Rules Concerning Campaign and Political Finance (Rules), 8 Code Colo. Regs. 1505–6, promulgated by the secretary of state under the Act, does not require a different conclusion. That rule, which addresses violations and complaints, provides as relevant here:

6.1 If the appropriate officer, as defined in Section 2(1) of Article XXVIII, discovers a possible violation of Article XXVIII or Title 1, Article 45, and no complaint alleging such violation has been filed with the secretary of state pursuant to Article XXVIII, Section 9(2)(a), then the appropriate officer shall:

a. Provide the person believed to have committed the violation with written notice of the facts or conduct that constitute the possible violation, and

b. Allow seven business days to correct the violation or to submit written statements explaining the reasons that support

a conclusion that a violation was not committed.

6.2 If, within the time allotted pursuant to Rule 6. 1, the person fails to correct the violation or to offer a satisfactory explanation, then the appropriate officer may file a complaint pursuant to Article XXVIII, Section 9(2)(a).

By its use of the term "may," Rule 6.2 grants permission to the appropriate officer to file a complaint under section 9(2)(a), the "private person" procedure, but does not require that filing. *See Dep't of Transp. v. First Place, LLC*, 148 P.3d 261, 264 (Colo. App.2006) ("may" is a permissive, not mandatory, term). Thus, the appropriate officer may either directly sanction the offending party under section 10(2)(b), or initiate a complaint under section 9(2)(a).

Here, the ALJ, proceeding upon a private complaint filed under section 9(2)(a) of the Amendment, found the Committee had violated § 1–45–108 by failing to fully disclose all the Committee's contributions and expenditures in its reports and failing to establish a bank account required under section 3(9) of the Amendment, and she imposed a civil penalty from the date the Committee first filed its inaccurate report. We conclude the ALJ had authority to impose that sanction.

## II. Calculating the Penalty

The Committee asserts that the ALJ erred in calculating the penalty because the Committee had complied with its statutory reporting obligations. Specifically, it asserts that no penalty could be assessed after September 10, 2007, when it filed its last report, because the statutes dealing with electronic filing do not require such a filing. We disagree.

### A. Standard of Review

■ Ordinarily, we review a penalty imposed by an ALJ for abuse of discretion. *Colo. Real Estate Comm'n v. Hanegan*, 947 P.2d 933, 935 (Colo.1997) *(Hanegan); Associated Business Prods. v. Indus. Claim Appeals Office*, 126 P.3d 323, 325 (Colo.App. 2005). However, when, as here, whether a penalty can be imposed depends upon the

interpretation of a statute, we review the issue de novo. *See Dillard v. Indus. Claim Appeals Office,* 121 P.3d 301, 303 (Colo.App. 2005), *aff'd,* 134 P.3d 407 (Colo.2006).

Principles of statutory interpretation parallel those employed in interpreting constitutional provisions noted previously. *CCEG,* 187 P.3d at 1215.

### B. Filing Requirements

Under the Act, the secretary of state must establish, operate, and maintain a system that enables a party to file required reports electronically, using the internet. § 1–45–109(6)(a), C.R.S.2008. Any person required to file reports may use the electronic filing system "in order to meet the filing requirements of" the Act. § 1–45–109(6)(b), C.R.S. 2008. Any person required to file a report with a county clerk "may meet the filing requirements by using the electronic filing system." § 1–45–109(8)(c)(II), C.R.S.2008.

### C. Application

■ The Committee contends that it complied with these filing requirements because it completed the only reports that were electronically transmitted to it by the Clerk using the specified electronic filing system, and thus, its reports were "deemed properly filed" under section 1–45–109(6)(a) and (b) and (8)(c)(II). It further asserts that, because no additional reports were transmitted to it by the Clerk after September 10, 2007, the Committee met the filing requirements. Essentially, the Committee argues that, under the electronic system, the Clerk must send the form to be used in filing a report, and if the Clerk does not do so, the Committee does not need to file a report. We disagree.

Nowhere in these statutory provisions, or in the rules promulgated by the secretary of state, is the filing requirement conditioned upon posting by or receiving electronic transmissions from the Clerk. Instead, the requirement to disclose and file reports is unconditionally imposed until a committee is terminated. *See* § 1–45–108(1)(a)(I), C.R.S. 2008 (issue committees shall report contributions and expenditures); Rule 4.16 ("Until terminated in accordance with these rules, a committee shall file a disclosure report for every reporting period, even if the committee has no activity (expenditures or contributions) to report during the reporting period."); Rule 3.4 ("A committee may terminate if ... [the] committee files a termination statement of contributions and expenditures. A termination statement may be filed at any time.").

Here, even if we assume, without deciding, that the Clerk did not electronically transmit the report forms for the Committee to use after September 10, 2007, that does not relieve the Committee of its obligation to file. Accordingly, we reject this contention.

### III. "Good Faith" Exception to Sanctions

In his cross-appeal, complainant contends that the ALJ erred in not imposing any penalty for the Committee's failure to file reports from September 10, 2007 through January 23, 2008. Essentially, complainant contends that neither the Act nor the Amendment authorizes a "good faith" defense, and even if they do, there is no evidence in the record that the Committee acted in good faith. While we agree that the applicable provisions do not create a good faith defense, we nevertheless conclude that the ALJ has discretion to determine an appropriate penalty, that she did so here, and that she did not abuse her discretion.

### A. Standard of Review

■ We interpret statutes de novo. *CCEG,* 187 P.3d at 1220. We defer to an agency's interpretation in construing constitutional provisions and statutes relevant to its activities, but its interpretation is not binding. *Id.* at 1214.

■ We will not reverse an agency decision in which the exercise of discretion is authorized unless the agency or the ALJ acted in an arbitrary or capricious manner, made a determination that is unsupported by the evidence and the record, erroneously interpreted the law, or exceeded its constitutional or statutory authority. *See id.*

■ When an administrative agency is granted statutory authority to impose a sanction, such sanction may not be over-

turned absent an abuse of discretion. A reviewing court "may not substitute [its] judgment for that of the agency," but "must 'uphold the agency sanction unless it (1) bears no relation to the conduct, (2) is manifestly excessive in relation to the needs of the public, or (3) is otherwise a gross abuse of discretion.'" *Sherritt v. Rocky Mountain Fire Dist.*, 205 P.3d 544, 547 (Colo.App.2009) (quoting *Hanegan*, 947 P.2d at 936).

## B. Applicable Provisions

■ As previously noted, section 9(2)(a) of the Amendment authorizes an ALJ to render a decision upon a complaint, and if the ALJ concludes that a violation has occurred, "such decision shall include any appropriate order, sanction, or relief authorized by this article." Nothing in the Amendment, however, recognizes or grants a defense of "good faith," and an ALJ is not at liberty to engraft any limitation or restriction not specifically provided. *See Bruce v. City of Colorado Springs*, 129 P.3d 988, 993 (Colo.2006) (court will not read a statute to create an exception that the plain language does not suggest, warrant, or mandate); *Grover v. Indus. Comm'n*, 759 P.2d 705, 710 (Colo. 1988) (it would be imprudent to engraft onto the statutory scheme a substantial limitation when no such limitation is set forth in the legislation itself).

## C. Application

Here, the ALJ concluded that the Committee violated § 1–45–108(6) by not filing any reports of contributions or expenditures after September 10, 2007. However, she declined to impose a civil penalty in connection with that violation, stating:

> The ALJ determines that the Respondent Committee in good faith believed that its ongoing reporting obligations stopped when the Clerk and Recorder determined that there would be no recall election. And although the ALJ disagrees with the Committee's interpretation of the Act, there is no evidence that the Committee intentionally tried to withhold information from the public about its activities by simply refusing to file ongoing reports.

In light of the absence of any specific language in the Amendment allowing a "good faith" defense, the ALJ would have erred if she had allowed it. However, we do not read her decision in that manner.

In a previous section of the decision, just before the language quoted above, the ALJ discussed what appropriate order, sanction, or relief is authorized by the Amendment and the Act. She noted that one sanction is the imposition of a $50 per day penalty if a report is not filed on the day it is due. However, she also concluded that she was not required to impose that sanction and, instead, concluded that she "has discretion to reduce a penalty upon a showing of good cause." Fairly reading her decision in this context, we conclude that she was merely exercising her discretion in determining that the Committee's specific conduct did not warrant a sanction.

## D. ALJ's Discretion Concerning Sanctions

■ Complainant argues that the ALJ does not have discretion to impose *no* penalty. We disagree.

■ Within the phrase "such decision shall include any appropriate order, sanction, or relief authorized by this article," the word "shall" is presumed to have a mandatory meaning. *Skruch v. Highlands Ranch Metro. Dists. No. 3 & 4*, 107 P.3d 1140, 1143 (Colo.App.2004); *Janssen v. Denver Career Serv. Bd.*, 998 P.2d 9, 12 (Colo.App.1999). Therefore the ALJ's decision remedying a violation must include some order, sanction, or relief, but only one that is appropriate.

■ The word "appropriate" is defined as "specially suitable or proper," and the word limits otherwise harsh results. *See In re Marriage of Olar*, 747 P.2d 676, 681–82 (Colo. 1987); *see also In re Marriage of Ohr*, 97 P.3d 354, 358 (Colo.App.2004) (appropriate means fit, proper, belonging peculiarly, or special); *In re Marriage of Fernstrum*, 820 P.2d 1149, 1151 (Colo.App.1991) (appropriate employment means employment that is suited to the individual). Accordingly, here, the order, sanction, or relief must fit the circumstances of the case.

The word "any" means "without limitation or restriction," *Nat'l Farmers Union Prop. & Cas. Co. v. Estate of Mosher*, 22 P.3d 531, 534 (Colo.App.2000), or "all." *Kauntz v. HCA–Healthone, LLC*, 174 P.3d 813, 817 (Colo.App.2007). It can also mean one that is selected out of many. *See Webster's Third New International Dictionary* 97 (2002). Hence, the word here connotes a choice among options, without restriction.

The word "authorized" means granted or permitted, *see Webster's* at 147, and from its context the phrase "this article" refers to the entire Amendment. Accordingly, an ALJ may choose from any sanctions contained in the Amendment.

It follows, therefore, that the ALJ has discretion to make this choice. *See Sherritt,* 205 P.3d at 546 (phrase "any appropriate order" in former section 1–45–117(4) granted an ALJ discretion to determine the relief for a violation of the Act).

The question remains whether an ALJ, in exercising discretion, may choose to impose *no* sanction or penalty if the ALJ reasonably concludes one would not be appropriate. We conclude that she may. In section 10(2)(b)(1) of the Amendment, the ALJ is specifically authorized to set aside or reduce a penalty for good cause. "Set aside" clearly contemplates imposing no sanction whatsoever. "Reduce" logically implies a lessening, even to zero.

Accordingly, we conclude that, while section 9 of the Amendment requires the ALJ to include in the decision an appropriate order, sanction, or relief as authorized by the terms of the Amendment, nevertheless, the ALJ has discretion to impose no sanction at all.

Contrary to complainant's contention, this conclusion does not contradict the language of section 1 of the Amendment that "the interests of the public are best served by ... strong enforcement of campaign finance requirements." While sanctions should undoubtedly be imposed when a significant violation occurs, it is not necessarily in the public's interest to sanction every single violation when other sanctions imposed in the same case appear to be deterrent enough.

### E. Evidence Supporting Exercise of Discretion

██ Complainant nevertheless contends that, even if the ALJ had discretion not to penalize the Committee for failing to file any reports from September 2007 through January 2008, she abused her discretion here. He argues that the decision is not reasonably supported by any competent evidence in the record, as there was no testimony proffered as to why the Committee failed to file these reports. We disagree.

Although the subsection was not cited specifically in the decision, we find ample support for the ALJ's determination in section 1–45–108(6), which states, in pertinent part:

> Any issue committee whose purpose is the recall of any elected official shall file a committee registration with the appropriate officer within ten business days of receiving its first contribution. Reports of contributions and expenditures shall be filed with the appropriate officer within fifteen days of the filing of the committee registration and every thirty days thereafter until the date of the recall election has been established and then fourteen days and seven days before the recall election and thirty days following the recall election.

The last sentence of this provision could be read to indicate that when no recall election is scheduled, there is no reporting requirement. While the ALJ rejected the Committee's interpretation, its explanation for not filing the reports had a reasonable basis in the language of the statute. Accordingly, we reject complainant's argument.

### IV. Attorney Fees

Complainant requests attorney fees on appeal under C.A.R. 38(d). We deny the request.

### A. Legal Standards

██ Under the cited rule, we may award attorney fees if we determine an appeal is frivolous. In *Castillo v. Koppes–Conway,* 148 P.3d 289, 292 (Colo.App.2006), a division of this court noted that an appeal may be frivolous in two ways:

First, where an appeal is taken in a case in which "the judgment by the tribunal below was so plainly correct and the legal authority contrary to appellant's position so clear that there is really no appealable issue," the appeal is held to be "frivolous as filed." Second, even in cases in which genuinely appealable issues may exist, so that the taking of an appeal is not frivolous, the appellant's misconduct in arguing the appeal may be such as to justify holding the appeal to be "frivolous as argued."

*Id.* (emphasis omitted) (quoting *Dungaree Realty, Inc. v. United States*, 30 F.3d 122, 124 (Fed.Cir.1994)). A claim or defense is frivolous if the proponent can present no rational argument based upon the evidence or law to support it. *See Brown v. Silvern*, 141 P.3d 871, 875 (Colo.App.2005).

### B. Application

#### 1.

 We disagree with complainant's contention that the Committee's appeal is frivolous as filed because it asserts that the ALJ did not have jurisdiction to hear claims and penalize violations. That is not the Committee's argument. Instead, the Committee has asserted a reasonable argument that only "the appropriate officer" under section 10 could impose sanctions. While we have rejected the assertion, it nevertheless has a basis in the language of the Amendment.

We also disagree that a division of this court, in *CCEG*, has already decided the issue. In that case, the division determined that section 9(2)(a) granted jurisdiction to the ALJ, but it did not have before it the contention, which the Committee asserts here, that the ALJ's authority was limited because she was not the appropriate officer.

#### 2.

We also reject complainant's assertion that the appeal is frivolous as argued because the Committee's counsel failed to cite, in its opening brief, either *CCEG* or section 9(2)(a) of the Amendment.

Complainant relies exclusively on Colo. RPC 3.3(2), which states, in pertinent part, that "[a] lawyer shall not knowingly . . . fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel."

We reject the contention for several reasons. First, counsel for complainant disclosed both provisions to this court in his opening answer brief. Second, as noted above, while *CCEG* held that an ALJ has jurisdiction to hear and determine violations of the Amendment and the Act, that case did not address the ALJ's authority as "the appropriate officer" under section 10.

#### 3.

Contrary to complainant's contention, we are not persuaded the Committee's argument that the ALJ erred in imposing fines concerning its conduct after September 10, 2007, is frivolous both as filed and as argued. The Committee presented a somewhat plausible interpretation of the Amendment which, had it been successful, would have required vacating the ALJ's conclusion that a violation of the Act and the Amendment had occurred.

#### 4.

The Committee's failure to identify the appropriate standard of review for the issues asserted in its opening brief is troubling. *See* C.A.R. 28(k) ("For each issue raised on appeal, the party raising such issue must provide, under a separate heading placed before discussion of the issue: (1) a concise statement of the applicable standard of appellate review with citation to authority. . . ."). We expect counsel to read, be familiar with, and comply with the Colorado Appellate Rules. Nevertheless, we conclude that the failure to do so here does not meet the definition of "frivolous."

The judgment is affirmed.

Judge ROY and Judge CONNELLY concur.