2012 COA 42

**COLORADO ETHICS WATCH,**
Complainant–Appellee,

v.

**CLEAR THE BENCH COLORADO,**
Respondent–Appellant.

No. 10CA2291.

Colorado Court of Appeals,
Div. VII.

March 15, 2012.

Perkins Coie, LLP, Robert N. Miller, Stephanie E. Dunn, L. Norton Cutler; Luis Toro, Denver, Colorado, for Complainant–Appellee.

Hale Westfall, LLP, Peter J. Krumholz, Denver, Colorado, for Respondent–Appellant.

John W. Suthers, Attorney General, Maurice G. Knaizer, Assistant Attorney General, Denver, Colorado, for Amicus Curiae Colorado Secretary of State.

BERNARD, Judge.

¶ 1 We are asked in this appeal to determine whether a committee that supports or opposes the retention of a justice or judge constitutes an "issue committee" or a "political committee" for purposes of Colorado campaign finance law. *See* Colo. Const. art. XXVIII (Campaign and Political Finance Amendment); §§ 1–45–101 to –118, C.R.S. 2011 (Fair Campaign Practices Act). This distinction is significant primarily because political committees are subject to contribution limits, while issue committees are not. *See* Colo. Const. art. XXVIII, § 3.

¶ 2 Respondent, Clear the Bench Colorado (CTBC), is an organization that opposed the retention of the three justices of the Colorado Supreme Court who stood for retention in 2010. Complainant, Colorado Ethics Watch, brought this action alleging that CTBC violated state election laws by registering as an issue committee rather than a political committee. An administrative law judge held that CTBC was a political committee.

¶ 3 As discussed below, we conclude that CTBC is properly characterized as a political committee. This is because, under the Campaign and Political Finance Amendment and the Fair Campaign Practices Act:

1. An issue committee is one that supports or opposes a ballot issue or ballot question; judicial retention is not a "ballot issue" or "ballot question" for purposes of campaign finance law; and, therefore, CTBC is not an issue committee; and

2. A political committee is one that supports or opposes the nomination or election of a candidate; a judge or justice standing for retention is a candidate in an election; and, therefore, CTBC is a political committee.

¶ 4 Based on these conclusions, we affirm the administrative law judge's ruling.

## I. Background

¶ 5 In April 2009, CTBC attempted to register with the Colorado Secretary of State as a political committee, identifying the committee's purpose only as "judicial retention." The Secretary's office rejected the application. Its reasons were that CTBC's stated purpose was "too vague" and that the organization "might fall under [the] definition of [an] issue committee." In a subsequent letter, however, the Secretary's office advised CTBC that it should register as a political committee and identify the specific judges whose retention it supported or opposed.

¶ 6 Instead, CTBC contacted the Elections Division of the Secretary of State to discuss its filing status. It submitted a proposed registration form listing itself as an issue committee. Although the Elections Division had accepted a registration form from an organization opposing retention of judges as a political committee in the past, it was uncertain how to classify CTBC. After several discussions, Elections Division staff concluded that CTBC should file as an issue committee.

¶ 7 While this action was pending before the administrative law judge, CTBC asked the Secretary to conduct emergency rulemaking to adopt a rule requiring committees supporting or opposing judicial officers seeking retention to register as issue committees. The Secretary declined to do so. In a letter to CTBC explaining the decision, the Director of the Elections Division cited "the role of the court [to interpret unclear statutory and constitutional provisions], the fact that a rule could be implemented just weeks before the [November 2010] general election, and the continuing litigation in this case."

¶ 8 The administrative law judge ruled that CTBC was a political committee.

## II. Analysis

### A. Standard of Review and Principles of Construction

¶ 9 This case presents a question of constitutional and statutory interpretation, which we review de novo. *Patterson Recall Comm., Inc. v. Patterson*, 209 P.3d 1210, 1214, 1217 (Colo.App.2009). The rules of construction applied to both types of provisions are essentially the same. *Id.* at 1217.

¶ 10 We begin with the plain language of a provision, giving the words their ordinary meaning. *Id.* at 1214. Our "fundamental responsibility" is to give effect to the purpose and intent behind enactment of the measure. *Well Augmentation Subdist. v. City of Aurora*, 221 P.3d 399, 410 (Colo.2009). "We construe the language in a manner that gives effect to every word," considering the language in the context of the statute or amendment as a whole. *Romanoff v. State Comm'n on Judicial Performance*, 126 P.3d 182, 188 (Colo.2006); *see also Patterson*, 209 P.3d at 1214–15. Where a constitutional provision and a statute pertain to the same subject matter, we construe them in harmony. *Colo. Project–Common Cause v. Anderson*, 178 Colo. 1, 7, 495 P.2d 220, 222 (1972)(court must read constitutional and statutory provisions relating to same subject matter in pari materia). "We do not resort to extrinsic modes of statutory construction unless the statutory language is ambiguous." *Colo. Ethics Watch v. City & Cnty. of Broomfield*, 203 P.3d 623, 625 (Colo.App. 2009)

### B. Definitions

¶ 11 Section 2(10) of the Campaign and Political Finance Amendment, defines issue committees. It provides in relevant part:

(a) "Issue committee" means any person, other than a natural person, or any group of two or more persons, including natural persons:

(I) That has a major purpose of supporting or opposing any ballot issue or ballot question; or

(II) That has accepted or made contributions or expenditures in excess of two hundred dollars to support or op-

pose any ballot issue or ballot question.

(b) "Issue committee" does not include political parties, political committees, small donor committees, or candidate committees as otherwise defined in this section.

Colo. Const. art. XXVIII, § 2(10).

¶ 12 Section 2(12) of the Amendment defines political committees. It states in relevant part:

(a) "Political committee" means any person, other than a natural person, or any group of two or more persons, including natural persons that have accepted or made contributions or expenditures in excess of $200 to support or oppose the nomination or election of one or more candidates.

(b) "Political committee" does not include political parties, issue committees, or candidate committees as otherwise defined in this section.

Colo. Const. art. XXVIII, § 2(12).

¶ 13 Thus, issue committees are concerned with ballot issues or ballot questions, while political committees are concerned with the nomination or election of candidates. Further, issue committees and political committees are mutually exclusive.

### C. CTBC Is a Political Committee

¶ 14 A political committee is a committee that has "accepted or made contributions or expenditures in excess of $200 to support or oppose the nomination or election of one or more candidates." Colo. Const. art. XXVIII, § 2(12)(a).

¶ 15 CTBC contends that it is not a political committee because (1) a justice or judge seeking retention is a separate class of "candidate"; and (2) political committees are those that seek nomination or election, but not retention, of a candidate. Because we conclude that a judicial officer seeking retention is a candidate like any other and a retention vote is an election, we disagree.

### 1. A Judicial Officer Seeking Retention Is a Candidate

¶ 16 Section 2(2) of the Amendment defines a "candidate."

"Candidate" means any person who seeks nomination or election to any state or local public office that is to be voted on in this state at any primary election, general election, school district election, special district election, or municipal election. "Candidate" also includes a judge or justice of any court of record who seeks to be retained in office pursuant to the provisions of section 25 of article VI. A person is a candidate for election if the person has publicly announced an intention to seek election to public office or retention of a judicial office and thereafter has received a contribution or made an expenditure in support of the candidacy. A person remains a candidate for purposes of this article so long as the candidate maintains a registered candidate committee. A person who maintains a candidate committee after an election cycle, but who has not publicly announced an intention to seek election to public office in the next or any subsequent election cycle, is a candidate for purposes of this article.

Colo. Const. art. XXVIII, § 2(2).

¶ 17 We reject CTBC's assertion that the first two sentences of this section create distinct "categories" of candidates. The word "also" means "in addition," "as well," "besides," or "too." *See Webster's Third New International Dictionary* 62 (2002). The word "include" means "to place, list, or rate as a part or component of a whole or of a larger group, class, or aggregate." *Id.* at 1143. Thus, the phrase "[c]andidate also includes" indicates that a single definition of "candidate" encompasses both scenarios, with the second sentence adding to the first.

¶ 18 CTBC also argues that the provision that "[a] person remains a candidate for purposes of this article so long as the candidate maintains a registered candidate committee" shows that judges are to be considered a different category of candidate because a judicial officer is prohibited from establishing a candidate committee by Rule 4.3 of the Code of Judicial Conduct. We disagree.

¶ 19 The purpose of a candidate committee is to manage campaign contributions and expenditures "under the authority of a candidate." Colo. Const. art. XXVIII, § 2(3). This provision establishes that a candidate with a registered candidate committee continues to be subject to the requirements of article XXVIII until the candidate committee ceases to operate. It does not state that one must form a registered candidate committee to be considered a candidate.

¶ 20 Neither does the phrase "candidate for election" describe a different class of candidate. That phrase does not appear anywhere else in the Amendment or the Fair Campaign Practices Act; thus, a "candidate for election" is not singled out for disparate treatment and does not constitute a separate subcategory of candidate. Rather, this language *extends* the definition of "candidate" to include a judicial officer who has not yet met the procedural requirements of Colorado Constitution article VI, section 25, but who has received or expended campaign assets after publicly announcing his or her intent to seek retention. This language also acknowledges that, as discussed below, a judge seeking retention is a candidate in an *election*.

¶ 21 We therefore conclude that section 2(2) of the Amendment does not establish distinct categories of candidates. Therefore, a judicial officer seeking retention is a candidate for purposes of campaign finance law.

### 2. A Judicial Retention Vote Is an Election

¶ 22 We further conclude that (1) the term "election" in the definition of a political committee encompasses judicial retention; and (2) a justice or a judge is either elected or not elected to serve an additional term as a result of a judicial retention election. Judicial retention votes are mandated by article VI, section 25. That section, entitled "[e]lection of justices and judges," provides that a justice or judge

who shall desire to retain his [or her] judicial office for another term after the expiration of his [or her] then term of office shall file with the secretary of state . . . a declaration of his [or her] intent to

*run for another term....* Upon the filing of such a declaration, a question shall be placed on the appropriate ballot at such general election, as follows:

"Shall [the justice or judge] be retained in office? YES/..../NO/..../." If a majority of those voting on the question vote "Yes," the justice or judge is thereupon *elected to* a succeeding full term. If a majority of those voting on the question vote "No," this will cause a vacancy to exist in that office at the end of his [or her] then present term of office.

Colo. Const. art. VI, § 25 (emphasis added).

¶ 23 Thus, a judicial retention vote is an election. This is evident from (1) the title of the provision; (2) the statement that a judicial officer seeking retention "run[s] for another term"; and (3) the statement that an affirmative retention vote results in the justice or judge being "elected to a succeeding full term." *Id.* Accordingly, a justice or judge seeking retention is a candidate in an election. *See* § 13-5.5-106(1)(a)(I), C.R.S. 2011 (duties of state commission on judicial performance include evaluating each supreme court justice and court of appeals judge "who must *stand for retention election*" (emphasis supplied)); *cf. Romanoff,* 126 P.3d at 189-90 (stating, in the context of examining appointments to judicial performance commissions, that "[j]udicial retention elections, as part of general elections, are held only in November of even-numbered years").

### 3. A Committee Supporting or Opposing Retention of a Judicial Officer Is a Political Committee

■ ¶ 24 Section 1-45-109(1)(a)(I), C.R.S. 2011, provides that "[c]andidates for *state-wide office,* the general assembly, district attorney, *district court judge,* or any office representing more than one county ... [and] political committees in support of or in opposition to such candidates" must file required disclosures with the secretary of state. (Emphasis added.) Thus, a committee supporting or opposing a candidate for district court judge—defined by Amendment section 2(2), as one seeking retention—is a political committee. Although this section does not spe-

cifically refer to justices of the supreme court or judges of the court of appeals, these are statewide offices and are therefore subject to the same classification. Further, nothing in the statute suggests that appellate judicial candidates should be treated differently from district court judges.

¶ 25 We reject CTBC's argument that a committee focused on judicial retention should be treated like a committee advocating for or against the recall of an elected official, which is classified as an issue committee under section 1-45-108(6), C.R.S.2011. Committees focused on the recall of an elected official were reclassified from political committees to issue committees in 2002. Ch. 73, sec. 2, § 1-45-108(6), 2002 Colo. Sess. Laws 198. However, judicial retention elections are different from recall elections. *Compare* Colo. Const. art. VI, § 25 (judicial retention elections) *with* Colo. Const. art. XXI, § 1 ("[s]tate officers may be recalled"), *id.* § 2 ("[f]orm of recall petition"), *and* §§ 1-12-101 to -123, C.R.S.2011 (recall from office). The recall provisions in the Colorado Constitution and statutes do not refer to justices or judges.

¶ 26 Instead, article VI, section 23 describes how they may be removed from office if convicted of "a felony or other offense involving moral turpitude," Colo. Const. art. VI, § 23(2), or if they have engaged in "willful misconduct in office, willful or persistent failure to perform ... duties, intemperance," or violations of the Code of Judicial Conduct, *id.* § 23(3)(d).

¶ 27 We presume that, if the General Assembly had intended to classify judicial retention elections as recall elections, it would have clearly expressed that intent. *See Dubois v. Abrahamson,* 214 P.3d 586, 588 (Colo. App.2009)("[C]ourts presume that if [the] General Assembly intended [a] statute to achieve a particular result, it would have employed terminology clearly expressing that intent.") (citing *Mason v. People,* 932 P.2d 1377, 1380 (Colo.1997)).

¶ 28 Thus, a committee that supports or opposes the retention of a judicial officer is a political committee because (1) it supports or opposes the election of a candidate; and (2) it

is recognized as such by section 1–45–109(1)(a)(I).

¶ 29 Here, CTBC accepted contributions and made expenditures of over $200 to oppose the retention of three justices of the Colorado Supreme Court. It is, therefore, a political committee.

### D. CTBC Is Not an Issue Committee

¶ 30 CTBC cannot be both a political committee and an issue committee because the two are defined to be mutually exclusive. *See* Colo. Const. art. XXVIII, § 2(10) & (12). However, CTBC also does not meet the basic definition of an issue committee.

¶ 31 An issue committee is a committee "[t]hat has a major purpose of supporting or opposing any *ballot issue or ballot question;* or ... [t]hat has accepted or made contributions or expenditures in excess of two hundred dollars to support or oppose any *ballot issue or ballot question.*" *Id.* § 2(10)(a) (emphasis added).

¶ 32 Because the Fair Campaign Practices Act and the Campaign and Political Finance Amendment both pertain to campaign finance regulations, they are in pari materia and must be construed together. *See Colo. Project–Common Cause,* 178 Colo. at 7, 495 P.2d at 222. Here, the terms "ballot issue" and "ballot question" are not defined in Campaign and Political Finance Amendment. However, both words are expressly defined by the Fair Campaign Practices Act. To harmonize the two campaign finance provisions, therefore, we apply the same interpretation of these terms when interpreting the Amendment.

¶ 33 The Fair Campaign Practices Act defines a "ballot issue" as "a state or local government matter arising under Colorado Constitution article X, section 20, as defined in sections 1–41–102(4) and 1–41–103(4), respectively." § 1–1–104(2.3), C.R.S.2011; *see* § 1–45–103(1.3), C.R.S.2011 (adopting definition of ballot issue from Uniform Election Code of 1992). Article X, section 20, is known as the Taxpayer's Bill of Rights (TABOR). Matters arising thereunder include the approval of new or increased taxes, revenue changes, and measures to weaken limits on government spending and debt. §§ 1–41–102(4), 1–41–103(4). Judicial retention votes, in contrast, arise under article VI, section 25.

¶ 34 " 'Ballot question' means a state or local government matter involving a citizen petition or referred measure, other than a ballot issue." § 1–1–104(2.7), C.R.S.2011; *see* § 1–45–103(1.5), C.R.S.2011. Thus, the mere fact that a retention vote appears on the ballot in the form of a question does not render it a "ballot question" for purposes of the Fair Campaign Practices Act. Rather, a judicial retention vote is not a "ballot question" because it does not involve a citizen petition or referred measure. As discussed above, judicial retention votes are mandated by Colorado Constitution article VI, section 25. A retention vote is triggered automatically when a justice or judge files a declaration of his or her intent to run for another term with the secretary of state. Thus, contrary to CTBC's argument, the language in article VI, section 25, stating that "a question shall be placed on the ... ballot" does not render judicial retention a "ballot question" for purposes of the Fair Campaign Practices Act.

¶ 35 Here, CTBC contends that it is an issue committee because it had a major purpose of opposing a "ballot issue" or "ballot question"—specifically, the "issue" or "question" whether certain supreme court justices should be retained in office. However, a judicial retention vote is not a "ballot issue" because it does not arise under TABOR. Similarly, a judicial retention vote is not a "ballot question" because it does not involve a citizen petition or referred measure.

¶ 36 Because a judicial retention vote does not meet the definition of a "ballot issue" or "ballot question" contained in the Fair Campaign Practices Act, we conclude that CTBC is not an issue committee.

### E. The Position of the Secretary of State Is Not Entitled to Deference

¶ 37 CTBC argues that we must defer to the position expressed by personnel from the Secretary of State's office that CTBC is an issue committee. We disagree.

¶ 38 "A reviewing court must give deference to the reasonable interpretations of the administrative agency authorized to enforce a statute." *Colo. Ethics Watch*, 203 P.3d at 624 (citing *Coffman v. Colo. Common Cause*, 102 P.3d 999, 1005 (Colo.2004)); *see also Chevron, U.S.A., Inc. v. Nat. Resources Def. Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer"). However, an agency's statutory construction is not binding on an appellate court, particularly where, as here, the underlying facts are undisputed and the issue presented is one of law. *Colo. Ethics Watch*, 203 P.3d at 624. Courts will not defer to an interpretation that misconstrues or misapplies the law. *See Huddleston v. Bd. of Equalization*, 31 P.3d 155, 160 (Colo.2001).

¶ 39 Further, "deference would not be appropriate if the [agency's] statutory interpretation would defeat the General Assembly's intent in enacting the statute or is contrary to the plain meaning of the statute." *Board of Cnty. Comm'rs v. Colo. Public Utilities Comm'n*, 157 P.3d 1083, 1089 (Colo. 2007).

¶ 40 Here, the position expressed by the Secretary's staff was not the product of formal adjudication or formal rulemaking. To the contrary, the Secretary declined CTBC's request for emergency rulemaking. Thus, the Secretary's opinion is not entitled to deference. *See Wiesner v. Huber*, 228 P.3d 973, 975 (Colo.App.2010) ("an unwritten policy that is not promulgated through formal rulemaking is entitled to no deference").

¶ 41 To the extent that the opinion of the Secretary's staff could be viewed as presumptively persuasive, even though it is not binding, *see Banner Advertising, Inc. v. City of Boulder*, 868 P.2d 1077, 1083 (Colo.1994), we conclude that it is not persuasive here. The record indicates that, in advising CTBC to register as an issue committee, the Secretary's staff focused on the fact that judicial retention appears as a "question" on a "ballot"; thus, staff members concluded that judicial retention is a "ballot question" for purposes of campaign finance law. As discussed above, we have held that this position is inconsistent with the clear language of the constitutional and statutory provisions. Thus, we need not defer to the statement of the Secretary's staff adopting that position. *See Board of Cnty. Comm'rs*, 157 P.3d at 1089.

¶ 42 The order is affirmed.

Judge RUSSEL and Judge HAWTHORNE concur.