Opinion by Judge LICHTENSTEIN.
¶ 1 This appeal arises out of a challenge to the Colorado Secretary of State's rulemaking authority brought by plaintiffs, Colorado Common Cause and Colorado Ethics Watch, pursuant to section 24-4-106, C.R.S.2011. The Secretary of State, Scott Gessler (the Secretary), appeals the trial court's order finding that he exceeded his rulemaking authority by promulgating Rule 4.27.[1] We affirm.
¶ 2 The Secretary contends that Rule 4.27 was intended to clarify the applicability of registration and disclosure requirements to issue committees following Sampson v. Buescher, 625 F.3d 1247 (10th Cir.2010). Plaintiffs contend, however, that Rule 4.27 modifies constitutional and statutory requirements by changing the threshold for reporting expenditures and contributions by issue committees from $200 to $5,000.
I. Background
A. Campaign Finance Law
¶ 3 In 2002, Colorado voters adopted the Campaign and Political Finance Amendment (the Amendment), Colo. Const. art. XXVIII. The Amendment sets forth specific disclosure requirements that apply to various categories of participants in the elections process and requires the "full and timely disclosure of campaign contributions, independent expenditures, and funding of electioneering communications, and strong enforcement of campaign finance requirements." Colo. Const. art. XXVIII, § 1.
¶ 4 Included within the purview of the Amendment is the regulation of "issue committees" that advocate for or against ballot issues or ballot questions. The Amendment defines "issue committee" as
any person, other than a natural person, or any group of two or more persons, including natural persons:
(I) That has a major purpose of supporting or opposing any ballot issue or ballot question; [and][2]
(II) That has accepted or made contributions or expenditures in excess of two hundred dollars to support or oppose any ballot issue or ballot question.
Colo. Const. art. XXVIII, § 2 (10)(a).
¶ 5 The Amendment incorporates the registration and disclosure requirements set forth in the Fair Campaign Practices Act (the Act), § 1-45-108, C.R.S.2011[3] . Colo. Const. art. XXVIII, § 7. Under the Act, issue committees are required to comply with a variety of requirements, including requirements to register with the Secretary and to disclose their contributions received, expenditures made, and obligations entered into. §§ 1-45-108(1)(a)(I), (3.3), 1-45-109(1)(c), C.R.S.2011.
¶ 6 The Amendment and the Act also impose various duties on the Secretary with regard to the enforcement of campaign finance laws. Among these duties is a requirement to promulgate such rules as may *453 be necessary to administer and enforce any provision of the Amendment or the Act. Colo. Const. art. XXVIII, § 9 (1)(b); § 1-45-111.5(1), C.R.S.2011.
¶ 7 Rule 4.27, as promulgated by the Secretary, states that "[a]n issue committee shall not be subject to any of the requirements of [the Amendment] or [the Act] until the issue committee has accepted $5,000 or more in contributions or made expenditures of $5,000 or more during an election cycle." The rule further states that "[c]ontributions received and expenditures made before reaching the $5,000 threshold are not required to be reported."
B. Sampson v. Buescher
¶ 8 In November 2010, a panel of the Tenth Circuit issued its decision in Sampson. In that case, several neighbors canvassed their neighborhood and distributed flyers opposing the annexation of their neighborhood into the Town of Parker. Sampson, 625 F.3d at 1249. A supporter of the annexation filed a complaint with the Secretary alleging that the neighbors had violated campaign finance laws by failing to (1) register as an issue committee, (2) set up a separate committee bank account, and (3) comply with the statutory reporting requirements. Id. at 1251.
¶ 9 These neighbors filed suit in federal district court alleging that the campaign finance laws infringed their First Amendment rights, and thus they challenged the laws as unconstitutional, facially and as applied to them. Id. at 1253. The district court upheld the constitutionality of the requirements as applied to the neighbors. On appeal, the Tenth Circuit panel reversed and held that the Colorado registration and reporting requirements, as applied to the neighbors, unconstitutionally burdened their First Amendment right of association. It declined to address the facial challenge.
¶ 10 In its analysis, the Sampson panel subjected the registration and disclosure requirements to "exacting scrutiny" by balancing the importance of the governmental interest in the registration and disclosure requirements against the financial burden of state regulation on the neighbors' right of association. Id. at 1261 (citing Doe v. Reed, 561 U.S. 186, 195-96, 130 S.Ct. 2811, 2818, 177 L.Ed.2d 493 (2010) ; Buckley v. Valeo, 424 U.S. 1, 64, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) ). The panel recognized that in a ballot-issue campaign (as distinct from a candidate campaign), the only public interest is "informational," that is, "the public interest in knowing who is spending and receiving money to support or oppose a ballot issue." Id. at 1256. The panel also recognized that "this interest is significantly attenuated when the organization is concerned with only a single ballot issue and when the contributions and expenditures are slight." Id. at 1259. Applying this rationale, the panel determined that the public interest there was "minimal" because the expenditures in the case were "sufficiently small that they say little about the contributors' views of their financial interest in the annexation issue." Id. at 1260-61.
¶ 11 The Sampson panel weighed this "minimal" public interest against the burden of the registration and disclosure requirements in the context of the case. The panel observed that the requirements set forth in Colorado's Constitution, the Act, and the Secretary's rules are complex, and although few rules apply to issue committees, such a committee would have to sift through all of the rules to determine which ones apply. Id. at 1259-60. Noting that the failure to comply with the rules can be expensive, the panel was not surprised that the neighbors felt the need to hire counsel, whose fee was comparable to, if not in excess of, the contributions received in their anti-annexation effort. Hence, the panel concluded that the financial burden imposed on the neighbors by the registration and reporting requirements was substantial, because it approached or exceeded the value of their financial contributions to their political effort. Id. at 1261. Thus, the panel held that it was unconstitutional to impose that burden on them.
¶ 12 The panel did "not attempt to draw a bright line below which a ballot-issue committee cannot be required to report contributions and expenditures," explaining that the case was "quite unlike ones involving the expenditure of tens of millions of dollars on *454 ballot issues presenting 'complex policy proposals.' " Id. (quoting Cal. Pro-Life Council, Inc. v. Getman, 328 F.3d 1088, 1105 (9th Cir.2003) ). Instead, the panel noted only that the neighbors' "contributions and expenditures [were] well below the line." Id.
C. Subsequent Actions
¶ 13 In response to Sampson, the Secretary's predecessor commenced a rulemaking process to implement the decision, which the Secretary continued. As part of this process, the Secretary published proposed Rule 4.27. After conducting several hearings, and considering past Colorado issue committee expenditures and contributions as well as registration and disclosure requirements in other states, the Secretary adopted Rule 4.27. As stated in the Secretary's Statement of Basis, Purpose, and Specific Statutory Authority, the purpose of Rule 4.27 was to change "the contribution and expenditure threshold that triggers enforcement of the requirement for an issue committee to register and file disclosure reports, in order to resolve uncertainty about registration and disclosure requirements in light of the ruling [in Sampson ]."
¶ 14 Shortly thereafter, plaintiffs brought this lawsuit, under section 24-4-106, challenging the rule. The Secretary asserted a counterclaim seeking a declaration that, under Sampson, "the definition of issue committee is unenforceable unless and until the General Assembly enacts a statute, or the Secretary promulgates a rule, that establishes a minimum level of contributions or expenditures that triggers the formation of an issue committee." The trial court held that the Secretary had exceeded his rulemaking authority by promulgating Rule 4.27. The court also dismissed the Secretary's counterclaim. This appeal followed.
II. Standard of Review
¶ 15 In an action brought under section 24-4-106, the trial court reviews the agency record to determine whether an agency action is in error. § 24-4-106(6), C.R.S.2011. A reviewing court may reverse an administrative agency's action if the court finds that the agency exceeded its constitutional or statutory authority or made an erroneous interpretation of law. Table Services, LTD v. Hickenlooper, 257 P.3d 1210, 1217-18 (Colo.App.2011) (citing McClellan v. Meyer, 900 P.2d 24, 29 (Colo.1995) ); see also § 24-4-106(7), C.R.S.2011.
¶ 16 Because this appeal concerns issues of law, we review the district court's ruling de novo. See Bd. of Cnty. Comm'rs v. Colo. Pub. Utils. Comm'n, 157 P.3d 1083, 1088 (Colo.2007).
III. Rulemaking Authority
¶ 17 Because "the General Assembly cannot delegate explicitly for every contingency that may arise," it is well established that "agencies possess implied and incidental powers filling the interstices between express powers to effectuate their mandates." Hawes v. Colo. Div. of Ins., 65 P.3d 1008, 1016 (Colo.2003). Thus, the lawful delegation of power to an administrative agency carries with it the authority to do whatever is reasonable, such as promulgating rules, to fulfill its duties. Id.
¶ 18 However, the agency does not have the authority to promulgate rules that modify or contravene statutory or constitutional provisions. See § 24-4-103(4)(b)(IV), (8)(a), C.R.S.2011 (no rule may conflict with other provisions of law, and any rule that conflicts with a statute shall be void); Colo. Consumer Health Initiative v. Colo. Bd. of Health, 240 P.3d 525, 528 (Colo.App.2010) ("A rule may not modify or contravene an existing statute, and any rule that is inconsistent with or contrary to a statute is void."); Sanger v. Dennis, 148 P.3d 404, 413 (Colo.App.2006) (recognizing the lack of authority to promulgate rules that modify or contravene constitutional provisions).
A. Scope of Rule 4.27
¶ 19 Thus, we turn to whether Rule 4.27 merely enables the Secretary to fulfill his duties within the confines of a constitutional application of the Amendment and the Act, or whether it impermissibly modifies or contravenes these constitutional and statutory registration and disclosure requirements. Rule 4.27 creates a contribution and expenditure threshold of $5,000 that triggers an *455 issue committee's duty to register and disclose. In contrast, the Amendment and the Act establish a threshold of $200.[4] See Colo. Const. art. XXVIII, § 2 (10)(a); § 1-45-108(1)(a)(I), (3.3). On its face, Rule 4.27 directly conflicts with the clear requirements of Colorado law.
¶ 20 Therefore, the Secretary appropriately concedes that unless Sampson abrogated the $200 threshold for registration and disclosure by issue committees, he lacked the authority to promulgate Rule 4.27. He contends that Sampson did just that and, as a result, created a "gap in the laws governing registration and reporting by issue committees." Rule 4.27, he asserts, remedies this gap by providing a definitive standard allowing him to administer and enforce the campaign finance laws. Although in promulgating the rule the Secretary was attempting to clarify the registration and reporting requirements in light of Sampson, we conclude that Sampson did not facially invalidate any provision of Colorado campaign finance law, and to the extent Sampson impacts the future application of campaign finance laws on issue committees in a similar factual context, Rule 4.27 exceeds the scope of Sampson.
B. Impact of Sampson
¶ 21 The Secretary interprets Sampson as creating a gap in Colorado's campaign finance law that must be addressed through his rulemaking authority. We are not persuaded.
¶ 22 Generally, we defer to the reasonable interpretations of administrative agencies. See Colorado Ethics Watch v. Clear the Bench Colo., 2012 COA 42, ¶ 38, 277 P.3d 931, 937 (citing Colorado Ethics Watch v. City & Cnty. of Broomfield, 203 P.3d 623, 624 (Colo.App.2009) ). However, no deference is required where, as here, the underlying facts are undisputed and the issue is a matter of law. Id. Similarly, we are not bound by an agency's interpretation of judicial precedent. See Bd. of Cnty. Comm'rs v. Colo. Oil & Gas Conservation Comm'n, 81 P.3d 1119, 1125 (Colo.App.2003) (COGCC ); FirstBank-Longmont v. Bd. of Equalization, 990 P.2d 1109, 1111 (Colo.App.1999) ("courts must interpret the law and are not bound by an agency interpretation that misconstrues it").
¶ 23 We do not agree with the Secretary, in any event, that Sampson created a gap in the law, triggering his obligation to promulgate a rule. The Tenth Circuit panel declined to address the facial challenge to Colorado's campaign finance laws, and only held that the application of these laws to the plaintiffs in that case unconstitutionally burdened their freedom of association. See Sampson, 625 F.3d at 1249. Consequently, Sampson provides persuasive authority with regard to future applications of the campaign finance laws in a similar context, but does not render these laws completely inoperative. See Sanger, 148 P.3d at 410-11.
¶ 24 Nonetheless, the Secretary contends his promulgation of Rule 4.27 was justified because he is obligated to follow the law as interpreted by federal courts because administrative agencies must "follow the law of the circuit whose courts have jurisdiction over the cause of action." Hyatt v. Heckler, 807 F.2d 376, 379 (4th Cir.1986) (federal agency); see Ithaca College v. NLRB, 623 F.2d 224, 228 (2d Cir.1980) (same). However, even assuming without deciding the Secretary is so bound, we conclude that Rule 4.27 exceeds the holding of Sampson.
¶ 25 Rule 4.27, as promulgated by the Secretary, renders every provision of the Amendment and the Act completely inoperative for all issue committees prior to reaching the $5,000 threshold. The rule also provides that "[c]ontributions received and expenditures made before reaching the $5,000 threshold are not required to be reported." These limitations are not established by Sampson. Indeed, the Sampson panel implicitly acknowledged that Colorado *456 campaign finance law (which sets forth a $200 threshold) may be constitutionally applied outside of the context presented to it. 625 F.3d at 1261 (noting the case did not involve the expenditure of tens of millions of dollars on complex policy proposals). Consequently, the rule effectively modified and contravened Colorado campaign finance law by eliminating certain requirements of the Amendment and the Act. See § 24-4-103(4)(b)(IV), (8)(a) ; Colo. Consumer Health Initiative, 240 P.3d at 528 ; Sanger, 148 P.3d at 413.
¶ 26 We are also guided by COGCC , where a division of this court set aside a rule amended by the Colorado Oil and Gas Conservation Commission. 81 P.3d at 1125. The amendment was promulgated to inform oil and gas operators of existing case law and reduce confusion. Id. The division noted that the scope of the amended rule was much broader than the case law it was intended to clarify. Id. Consequently, the division declared the amendment to the rule void because it conflicted with other provisions of law. Id.
¶ 27 Similarly here, Rule 4.27 invalidates the requirements imposed on issue committees far beyond the reach of Sampson. Thus, in promulgating this rule, the Secretary exceeded his authority and the rule must be set aside as void. Id.; see also § 24-4-106(7) ; Colo. Consumer Health Initiative, 240 P.3d at 528.
IV. The Secretary's Counterclaim
¶ 28 In his pleadings, the Secretary asserted a counterclaim seeking a declaration that, under Sampson, "the definition of issue committee is unenforceable unless and until the General Assembly enacts a statute, or the Secretary promulgates a rule, that establishes a minimum level of contributions or expenditures that triggers the formation of an issue committee."
¶ 29 The trial court found that its interpretation of Sampson was "fundamentally at odds" with the Secretary's counterclaim and determined that, following Sampson, the definition of issue committee remained enforceable, except in contexts similar to Sampson. The trial court questioned the Secretary's authority to assert his counterclaim against plaintiffs here, but determined that, given its interpretation of Sampson, it need not decide that issue.
¶ 30 On appeal, the parties contest whether the Secretary had authority to assert his counterclaim. However, like the trial court, we need not decide this issue.
¶ 31 As noted, the Sampson panel did not invalidate any specific provisions of law, let alone the constitutional definition of an issue committee. Indeed, to the extent Sampson affects the Amendment or the Act, it affects only the application of the registration and disclosure requirements for issue committees, not the definition of an issue committee itself. Thus, what constitutes an issue committee remains unchanged, but Sampson may affect whether the imposition of registration and disclosure requirements on a particular issue committee is constitutional.
¶ 32 Because our interpretation resolves the issue raised by the Secretary's counterclaim, we need not determine whether the counterclaim was appropriately raised. Although our interpretation of Sampson is slightly different from the trial court's, we conclude that the court appropriately dismissed the Secretary's counterclaim. See Negron v. Golder, 111 P.3d 538, 542 (Colo.App.2004) (we may affirm a trial court's decision on different grounds).
¶ 33 The order is affirmed.
Judge WEBB and Judge PLANK* concur.

Rule 4.27 has since been renumbered as Rule 4.1, 8 Code Colo. Regs. 1505-6. However, in the interests of consistency, we use the same designation as the parties and the trial court, and refer to the rule as Rule 4.27 throughout this opinion.

Although the Amendment uses the disjunctive "or," the Secretary's rules interpret it to require both conditions before a group is considered an issue committee. Rule 1.12.2, 8 Code Colo. Regs. 1505-6.

While the Act was amended after the decision in Sampson, the relevant statutory requirements have not been substantially altered. See Ch. 151, sec. 2, § 1-45-108, 2010 Colo. Sess. Laws 522; Ch. 270, sec. 5, § 1-45-108, 2010 Colo. Sess. Laws 1241.

As noted above, the Amendment includes within the definition of "issue committee" a threshold of $200. Colo. Const. art. XXVIII, § 2 (10)(a). Thus, an issue committee does not exist prior to receiving or expending $200, and it is unclear whether any issue committee could be required to disclose contributions received or expenditures made prior to its own existence. However, this issue is not before us, and we make no determination as to the propriety of any such requirement.

Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5 (3), and § 24-51-1105, C.R.S.2011.