2016 COA 26

**COLORADO REPUBLICAN PARTY, Plaintiff–Appellee,**

v.

**Wayne W. WILLIAMS, in his official capacity as Colorado Secretary of State, Defendant,**

**and**

**Colorado Ethics Watch, Intervenor–Appellant.**

**Court of Appeals No. 14CA1945**

Colorado Court of Appeals, Div. II.

Announced February 25, 2016

City and County of Denver District Court No. 14CV31851, Honorable Robert L. McGahey, Judge

Brownstein Hyatt Farber Schreck, LLP, Christopher O. Murray, Denver, Colorado, for Plaintiff–Appellee.

Luis Toro, Margaret Perl, Denver, Colorado, for Intervenor–Appellant.

Lewis, Bess, Williams & Weese P.C., Steven K. Imig, Teresa M. Abel, Denver, Colorado, for Amicus Curiae The Campaign Legal Center.

Opinion by JUDGE GRAHAM

¶ 1 "The First Amendment ' "has its fullest and most urgent application" to speech uttered during a campaign for politi-

cal office.' " *Citizens United v. Fed. Election Comm'n,* 558 U.S. 310, 339, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010) (citation omitted).

¶ 2 We are asked in this appeal to determine whether an independent expenditure committee established by a political party is subject to source and amount contribution limits under Colorado Constitution article XXVIII (the Campaign and Political Finance Amendment) and sections 1–45–101 to –118, C.R.S.2015 (the Fair Campaign Practices Act).

¶ 3 Intervenor, Colorado Ethics Watch (Ethics Watch), appeals the district court's grant of summary judgment in favor of plaintiff, the Colorado Republican Party (the Party), concluding the Party could establish an independent expenditure committee which was not subject to the source and contribution limits that restrict political parties under article XXVIII, section 3(3). We affirm.

## I. Background

¶ 4 The Party is a Colorado unincorporated nonprofit association with its principal offices in Greenwood Village, Colorado. It is a membership organization comprised of officers and other representatives from each of the sixty-four affiliated Republican county political party committees and Republican elected officials at the state and district levels. The Party is a major political party under Colorado law. *See* § 1–1–104(22), C.R.S.2015; §§ 1–3–100.3 to –108, C.R.S. 2015.

¶ 5 Ethics Watch is the registered trade name of Citizens for Responsibility and Ethics in Washington, a nonprofit organization authorized to conduct business in Colorado. Ethics Watch has filed and litigated several campaign finance complaints under the private-party enforcement system established in article XXVIII, section 9. *See, e.g., Colo. Ethics Watch v. Senate Majority Fund, LLC,* 2012 CO 12, 269 P.3d 1248; *Colo. Ethics Watch v. Gessler,* 2013 COA 172M, 363 P.3d 727.

¶ 6 In January 2010, the United States Supreme Court announced *Citizens United,* which held that a federal law banning corporate and labor union independent expenditures violated the First Amendment and was unconstitutional. 558 U.S. at 365, 130 S.Ct. 876. On March 22, 2010, the Colorado Supreme Court announced *In re Interrogatories Propounded by Governor Bill Ritter, Jr.,* 227 P.3d 892 (Colo.2010), concluding that article XXVIII, sections 3(4) and 6(2)[1] were unconstitutional in light of *Citizens United. Id.* at 894.

¶ 7 In response to *Citizens United,* the General Assembly enacted Senate Bill 10–203, now codified in the Fair Campaign Practices Act, in May 2010. Sections 1–45–103(11.5) and –107.5, C.R.S.2015, allow for the creation of independent expenditure committees (sometimes referred to in the media as "super PACs") and establish separate expenditure limits and disclosure requirements for those committees.

¶ 8 In November 2013, the Party filed a petition with the Colorado Secretary of State seeking a declaration that a political party may form an independent expenditure committee for the purpose of making independent expenditures and may raise funds through donations and otherwise in any amount from any permissible source to fund that committee.[2] On February 6, 2014, the Secretary declined to issue declaratory relief and recommended the Party seek declaratory relief in state or federal court. Despite declining to issue such relief, the Secretary did offer an advisory opinion that "a political party may form an independent expenditure committee . . . for the purposes of making independent expenditures and may raise funds in any amount from any permissible source." Office of the Colorado Secretary of State, In the Matter of the Colorado Republican Party's Petition for Declaratory Order (Feb. 6, 2014).

¶ 9 On May 7, 2014, the Party filed papers with the Secretary of State establishing and registering the Colorado Republican Party Independent Expenditure Committee (the

---

1. Colorado Constitutional article XXVIII, section 6(2) placed limits on expenditures for electioneering communications.

2. Subject nonetheless to the disclosure requirements of section 1–45–107.5, C.R.S. 2015.

IEC). The IEC adopted a set of Standing Rules that govern the activities of the IEC, and the IEC is managed by an executive director and advised by a management committee appointed by the Party's State Chairman. On May 8, the Party filed the current lawsuit in the City and County of Denver District Court suing the Secretary of State and seeking declaratory relief that it is authorized under existing law to sponsor, maintain, and operate an independent expenditure committee that may raise funds in any amount from any source permissible under Colorado law. On June 18, the district court granted Ethics Watch's motion to intervene in the lawsuit.

¶ 10 The Party filed a motion for summary judgment arguing that the current constitutional and statutory scheme allows it to create an independent expenditure committee and that such a committee is not subject to any contribution limits applicable to political parties under the Campaign and Political Finance Amendment and the Fair Campaign Practices Act. The Party further argued this conclusion is in concert with federal precedent on independent expenditures by political parties and that the Standing Rules of the IEC protect against any coordination between the IEC and the Party or a candidate.

¶ 11 Ultimately, the district court agreed. In a well-reasoned order, the court concluded "[b]ecause [the Party] is a person in Colorado, it may establish the IEC, so long as the IEC is independent."

The regulations defining coordination provide that expenditures are deemed to have been coordinated with a candidate committee or political party if "[a] person makes an expenditure or engages in spending at the request, suggestion, or direction of, in consultation with, or under the control of that candidate committee or political party." 8 Colo.Code Regs. § 1505–6, Rule 1.4. [Ethics Watch] implicitly concedes that the Standing Rules prevent a candidate committee, the Party, or any of the Party's agents or officers from making a "request" for, or "suggestion" of, an expenditure by the IEC. Similarly, [Ethics Watch] also apparently concedes that the Standing Rules preclude the IEC from making any expenditure "at the direction of" or "in consultation with" a candidate committee, the Party, or any of the Party's agents or officers.

¶ 12 Therefore, because Ethics Watch "believes, but has offered no evidence that the IEC will, in the future, not abide by its own rules," its position could not survive a motion for summary judgment.

## II. Standard of Review

¶ 13 "This case presents a question of constitutional and statutory interpretation, which we review de novo." *Colo. Ethics Watch v. Clear the Bench Colo.*, 2012 COA 42, ¶ 9, 277 P.3d 931. We also review de novo a district court's grant of summary judgment. *Oasis Legal Fin. Grp., LLC v. Coffman*, 2015 CO 63, ¶ 30, 361 P.3d 400.

## III. Law and Analysis

¶ 14 At its core, Ethics Watch contends the district court erred when it interpreted the Fair Campaign Practices Act to allow a political party to establish an independent expenditure committee not subject to the source and contribution limits set forth in article XXVIII. This contention requires us to interpret a variety of constitutional, statutory, and regulatory provisions, as well as analyze evolving United States Supreme Court precedent on the First Amendment and campaign finance. In the end, we conclude that the current legislative scheme and pertinent case law provides no barrier to the Party's establishment of the IEC.

¶ 15 The rules of construction are essentially the same for constitutional and statutory provisions. *Clear the Bench,* ¶ 9; *see Huber v. Colo. Mining Ass'n,* 264 P.3d 884, 889 (Colo.2011) ("We use the general rules of statutory construction in construing citizen-initiated measures."). "We begin with the plain language of a provision, giving the words their ordinary meaning." *Clear the Bench,* ¶ 10. "'We construe the language in a manner that gives effect to every word,' considering the language in the context of the statute or amendment as a whole." *Id.* (quoting *Romanoff v. State Comm'n on Judicial Performance,* 126 P.3d 182, 188 (Colo.

2006)). "Where a constitutional provision and a statute pertain to the same subject matter, we construe them in harmony." *Id.* "Our task is to ascertain and give effect to the General Assembly's intent." *Nowak v. Suthers,* 2014 CO 14, ¶ 20, 320 P.3d 340. "In construing a constitutional amendment, our goal is to determine and give effect to the will of the people in adopting the measure." *Huber,* 264 P.3d at 889. "Where we can decipher legislative intent with reasonable certainty because the plain language of a statute is unambiguous and clear, we do not need to resort to other rules of statutory construction." *Nowak,* ¶ 20.

### A. A Political Party May Establish an Independent Expenditure Committee

¶ 16 " 'Independent expenditure committee' means one or more persons that make an independent expenditure in an aggregate amount in excess of one thousand dollars or that collect in excess of one thousand dollars from one or more persons for the purpose of making an independent expenditure." § 1–45–103(11.5).

"Independent expenditure" means an expenditure that is not *controlled by* or *coordinated with* any candidate or agent of such candidate. Expenditures that are controlled by or coordinated with a candidate or candidate's agent are deemed to be both contributions by the maker of the expenditures, and expenditures by the candidate committee.

Colo. Const. art. XXVIII, § 2(9) (emphasis added); *see* § 1–45–103(11).

¶ 17 " 'Person' means any natural person, partnership, committee, association, corporation, labor organization, *political party,* or other organization or group of persons." Colo. Const. art. XXVIII, § 2(11) (emphasis added); *see* § 1–45–103(13).

¶ 18 The terms "controlled by" or "coordinated with" are not defined by article XXVIII or the Fair Campaign Practices Act.[3]

However, the Secretary of State, in accordance with article XXVIII, section 9(1)(b), promulgated the following rule defining "coordination."

Expenditures or spending are coordinated with a candidate committee or political party if:

21.1.1 A person makes an expenditure or engages in spending at the request, suggestion, or direction of, in consultation with, or under the control of that candidate committee or political party; or

21.1.2 An independent expenditure or electioneering communication is created, produced, or distributed:

(a) After one or more substantial discussion(s) between the candidate or political committee and the person making the expenditure or engaging in the spending,

(1) In which the person making the expenditure or engaging in the spending received non-public information about the candidate or political party's plans, projects, activities, or needs; and

(2) The information is material to the creation, production, or dissemination of an independent expenditure or electioneering communication; or

(b) By a common consultant who provides, or has provided during the election cycle, professional services to the candidate committee or political party as well as to the person making the expenditure or engaging in the spending; and

(1) In which the person making the expenditure or engaging in the spending received non-public information about the candidate or political party's plans, projects, activities, or needs; and

(2) The information is material to the creation, production, or dissemination of an independent expenditure or electioneering communication.

Campaign & Political Finance Rule 21.1, 8 Code Colo. Regs. 1505–6.

---

3. *See Rutt v. Poudre Educ. Ass'n,* 151 P.3d 585, 589–90 (Colo.App.2006) (defining coordination), *rev'd sub nom. Colo. Educ. Ass'n v. Rutt,* 184 P.3d 65 (Colo.2008); *see also Colo. Educ. Ass'n,* 184 P.3d at 70 ("[W]e conclude that it is not neces-sary to the resolution of this case to define 'coordination' under article XXVIII as the court of appeals did, and thus we leave this issue for another day.").

¶ 19 Reading these sections in harmony, a political party is a person who may establish an independent expenditure committee to collect or make independent expenditures—expenditures not controlled by or coordinated with any candidate—in excess of one thousand dollars.

¶ 20 A political party's independent expenditure committee may make independent expenditures when it does so without "the request, suggestion, or direction of, in consultation with, or under the control of that ... political party." *Id.* An expenditure is also not independent when its "creat[ion], produc[tion], or distribut[ion] [is made] ... [a]fter one or more substantial discussion(s) between the candidate or political committee and the person making the expenditure" or "[b]y a common consultant who provides ... professional services to the candidate committee or political party as well as to the person making the expenditure." *Id.*

¶ 21 The IEC's Standing Rules [4] create "a standing committee and separate segregated fund of the Colorado Republican Committee." The Standing Rules require that the IEC be managed by an executive director and a management committee of not less than three persons appointed by the State Chairman to a fixed term who cannot be removed without cause and the recommendation of the majority of the remaining members of the management committee. "The management or development of any of the plans, projects, activities, or expenditures of the IEC will be conducted independently of any candidate, agent of any candidate, candidate committee, officer, official, staff member, or authorized agent of the Colorado Republican Committee, including the State Chairman." The executive director and management committee cannot (1) hold any office or position within the regular political party organization; (2) serve as a delegate to any Republican assembly or convention; or (3) participate in the nomination or designation of any Republican candidate for office except in a precinct caucus meeting or voting in a primary election. "The executive director and management committee shall be prohibited from actively participating on the campaign committee or on the finance committee of any candidate for public office...." "The executive director and members of the management committee are expressly prohibited from soliciting or receiving any non-public information from any candidate for state or local public elective office ... regarding that candidate's campaign strategy, plans, projects, activities, or needs." And the executive director and members of the management committee "are expressly prohibited from soliciting or receiving any non-public information concerning the campaign strategy, plans, projects, activities, or needs of the Colorado Republican Committee or of any political party committee affiliated with the Colorado Republican Committee at the county, district, or local level." "[T]he IEC will not retain or utilize any common consultant or common vendor with the Colorado Republican Committee or with any Republican candidate for public office...." In addition, "[t]he IEC will fully comply with all disclosure and reporting requirements mandated by C.R.S. § 1–45–107.5 and other applicable provisions of Colorado campaign finance law, and will assist donors to the IEC to fulfill their reporting requirements under the independent expenditure statute."

¶ 22 In brief, under its Standing Rules the IEC is an independent expenditure committee operating without the control or coordination of the Party. Therefore, the IEC is able to collect or make independent expenditures in excess of one thousand dollars pursuant to the Campaign and Political Finance Amendment and the Fair Campaign Practices Act.

B.  An Independent Expenditure Committee Established by a Political Party Is Not Subject to Article XXVIII's Political Party Source and Contribution Limits

¶ 23 "[A]rticle XXVIII encourages voluntary spending limits and imposes reporting requirements, disclosure rules, and contribution limits *on certain entities*...." *Senate Majority Fund*, ¶ 17 (emphasis added).

¶ 24 The Campaign and Political Finance Amendment contains no source or amount contribution limits for independent expendi-

4. A complete copy of the Standing Rules is attached to this opinion as Appendix A.

ture committees. *See* Colo. Const. art. XXVIII, § 3 (addressing source and contribution limits on candidate committees, small donor committees, political parties, corporations and labor organizations, political committees, and issue committees).

¶ 25 Further, the Fair Campaign Practices Act states that "[a]n independent expenditure committee shall not be treated as a political committee and, therefore, shall not be subject to the requirements of section 3(5) of article XXVIII of the state constitution." § 1–45–103.7(2.5), C.R.S.2015. Therefore, an independent expenditure committee is not a political committee for purposes of source and contribution limits under article XXVIII.

¶ 26 Nor is an independent expenditure committee a political party under article XXVIII. A "political party" is "any group of registered electors who, by petition or assembly, nominate candidates for the official general election ballot." Colo. Const. art. XXVIII, § 2(13). In contrast, section 1–45–103(11.5) defines an independent expenditure committee in terms of its role in collecting donations [5] or making independent expenditures in excess of one thousand dollars. An independent expenditure committee does not nominate candidates for general election. *Compare* Colo. Const. art. XXVII, § 2(13), *with* § 1–45–103(11.5).

¶ 27 Nevertheless, Ethics Watch contends that the independent expenditure provisions of the Fair Campaign Practices Act do not override the source and contribution limits in article XXVIII. Ethics Watch concedes that independent expenditure committees shall not be treated as political committees under section 1–45–103.7(2.5), but it further argues that "[t]his statute does not say [independent expenditure committees] are free from *all* contribution limits in Article XXVIII" and therefore the "General Assembly deliberately chose *not* to exclude" independent expendi-

ture committees from political party contribution limits.[6] But the opposite is just as likely to be true, for the General Assembly chose not to *include* political party contribution limits when it created independent expenditure committees. And legal presumptions dictate this conclusion. *See People v. Torrez*, 2013 COA 37, ¶ 103, 316 P.3d 25 ("[W]e must presume that the General Assembly's choice of language was deliberate.") (J. Jones, J., concurring in part and dissenting in part); *see also Harrington v. Harrington*, 58 Colo. 154, 158, 144 P. 20, 21 (1914) ("[L]aws are presumed to be passed with deliberation and with a full knowledge of all existing ones on the same subject...." (quoting 1 J.G. Sutherland, *Statutes and Statutory Construction* § 267 (John Lewis ed., 2d ed. 1904))); *see also People v. Diaz*, 2015 CO 28, ¶ 15, 347 P.3d 621 ("[I]n interpreting a statute, we must accept the General Assembly's choice of language and *not add or imply words that simply are not there.*" (quoting *People v. Benavidez*, 222 P.3d 391, 393–94 (Colo.App.2009))) (emphasis added). We must presume the General Assembly deliberately did not include a provision subjecting independent expenditure committees to political party contribution limits established in article XXVIII, section 3(3).

¶ 28 Ethics Watch additionally argues that it is "nonsensical" for the Party to argue that article XXVIII's silence on independent expenditure committees excludes those committees from the contribution limits of article XXVIII "because such committees didn't exist until after the U.S. Supreme Court struck down the corporate expenditure limitation" in *Citizens United*.[7] While independent expenditure committees did not appear in Colorado legislation until after *Citizens United*, the General Assembly was free at that time to create contribution source and amount limits for independent expenditure committees, and it did not do so. Again, we presume this was a deliberate choice. *Torrez*, ¶ 103(J. Jones,

---

5. "Donations" are essentially pledges, gifts, advances, loans and loan guarantees or anything of value made for the purposes of making an independent expenditure. § 1–45–103(7.3)(a), C.R.S. 2015.

6. These statements are taken from Ethics Watch's response to the Party's motion for summary judgment.

7. These statements are taken from Ethics Watch's response to the Party's motion for summary judgment.

J., concurring in part and dissenting in part).[8] There may be perfectly good reasons why the General Assembly might seek to limit the scope and activities of independent expenditure committees in regard to campaign finance funds, but it has not done so in the Fair Campaign Practices Act.

### C. Federal Precedent Does Not Demand a Different Result

¶ 29 Ethics Watch also asks us to conclude as a matter of law, based on federal precedent, that any independent expenditure committee established by a political party is per se incapable of independence, i.e. it is always controlled by or coordinated with the party, thereby subjecting the committee to source and contribution limits.

¶ 30 We decline to read an exception into the law that is not there. This argument boils down to "political parties are different," and we recognize that "[p]olitical parties have influence and power in the Legislature that vastly exceeds that of any interest group." McConnell v. Fed. Election Comm'n, 540 U.S. 93, 188, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003), overruled in part by Citizens United, 558 U.S. 310, 130 S.Ct. 876, 175 L.Ed.2d 753; see Fed. Election Comm'n v. Colo. Republican Fed. Campaign Comm., 533 U.S. 431, 452, 121 S.Ct. 2351, 150 L.Ed.2d 461 (2001) (Colorado Republicans II) ("Parties thus perform functions more complex than simply electing candidates; whether they like it or not, they act as agents for spending on behalf of those who seek to produce obligated officeholders."). However, Colorado's current constitutional and statutory scheme allows all "persons" (political parties among them) to create independent expenditure committees and does not place limitations on those committees based on which "person" creates them.

¶ 31 Urging us to read article XXVIII's campaign finance contribution limits into the Fair Campaign Practices Act's provision allowing for the creation of independent expenditure committees, Ethics Watch cites numerous federal cases that uphold source and amount contribution limits. But those cases address vastly different issues than the rather straightforward question presented in this case. See McCutcheon v. Fed. Election Comm'n, 572 U.S. ——, 134 S.Ct. 1434, 188 L.Ed.2d 468 (2014); Citizens United, 558 U.S. 310, 130 S.Ct. 876; McConnell, 540 U.S. 93, 124 S.Ct. 619; Colo. Republicans II, 533 U.S. 431, 121 S.Ct. 2351; Colo. Republican Fed. Campaign Comm. v. Fed. Election Comm'n, 518 U.S. 604, 116 S.Ct. 2309, 135 L.Ed.2d 795 (1996) (Colorado Republicans I). Ethics Watch correctly argues that governing Supreme Court precedent holds that political party amount and source limits are constitutional regardless of whether the money is intended for independent expenditures. See, e.g., McCutcheon, 572 U.S. at ——, 134 S.Ct. at 1451; Colo. Republicans II, 533 U.S. at 481–82, 121 S.Ct. 2351. While that may be so, the Colorado Constitution does not place any contribution amount or source limitations on independent expenditure committees. Concluding otherwise would require us to read language into the statute. See Diaz, ¶ 15. We are therefore unwilling to conclude that an independent expenditure committee is a political party simply because such a committee is created by a political party. In the end, the Fair Campaign Practices Act allows for the creation of an independent committee which is not subject to the limits imposed on political parties or other committees. Because that Act also allows a political party to create such a committee, the Party may establish the IEC without the IEC being subject to the source and contribution limits in article XXVIII, section 3(3).

8. In its opening brief, Ethics Watch summarily argues that we "must hold Senate Bill 10–203 unconstitutional to the extent it purports to allow political parties to avoid the contribution limits and source restrictions set forth in Colo. Const. art. XXVIII, § 3." Our review of the record does not disclose where this argument was made to the district court. See Martinez v. People, 244 P.3d 135, 139 (Colo.2010) ("[A]ppellate courts should not reach Colorado Constitutional arguments raised for the first time on appeal." (citing People v. Cagle, 751 P.2d 614 (Colo.1988))). Furthermore, a single sentence does not present proper development of an argument. See People v. Simpson, 93 P.3d 551, 555 (Colo.App.2003) (declining to consider "a bald legal proposition presented without argument or development").

¶ 32 We also disagree with the contention that an independent expenditure committee established by a political party can never be meaningfully divorced from its essential nature of being closely tied to candidates. The Code of Colorado Regulations defines coordination, and the Standing Rules of the IEC mirror those regulations for the exact purpose of allowing the IEC to operate without being sponsored, maintained, and operated by the Party.[9] Speculation that the IEC will not follow its own Standing Rules is insufficient to overcome summary judgment.

D. We Decline To Address Whether Colorado Constitution Article XXVIII Violates the United States Constitution Amendment I

¶ 33 In the alternative, the Party presents a federal as-applied constitutional challenge to Colorado's campaign finance structure. Because we conclude that article XXVIII and the Fair Campaign Practices Act allow a political party to establish an independent expenditure committee that may accept contributions in any amount from any permissible source, we need not reach this argument. *See Senate Majority Fund,* ¶ 37 ("[W]e decline to make a leap that could potentially render article XXVIII unconstitutional under the federal constitution."); *Huber,* 264 P.3d at 889 ("As with any potential conflict between legislative provisions, we endeavor to give effect to the language and intent of both if possible; if two constructions are possible—one constitutional, the other unconstitutional—we choose the construction that avoids reaching the constitutional issue.").

## IV. Conclusion

¶ 34 To summarize, under section 1–45–103(11.5) an independent expenditure committee is "one or more persons that make an independent expenditure in an aggregate amount in excess of one thousand dollars or that collect in excess of one thousand dollars from one or more persons for the purpose of making an independent expenditure." A political party is a "person" under article XXVIII. Colo. Const. art. XXVIII, § 2(11); § 1–45–103(13). Neither the Campaign and Political Finance Amendment nor the Fair Campaign Practices Act establishes source or amount limits on contributions to independent expenditure committees. And so long as the expenditure is independent—"not controlled by or coordinated with any candidate or agent of such candidate"—its source will not be subject to any contribution limits. Colo. Const. art. XXVIII, § 2(9); § 1–45–103(11); Campaign & Political Finance Rule 21, 8 Code Colo. Regs. 1505–6. Because the Standing Rules adopted by the IEC protect against coordination between the IEC and the Party or candidates, the IEC is an independent expenditure committee as defined by the Fair Campaign Practices Act and the contribution source and amount limits in article XXVIII, section 3(3) do not apply to contributions to the IEC.

¶ 35 The judgment is affirmed.

JUDGE DAILEY and JUDGE ASHBY concur.

### Appendix A

COMMITTEE STANDING RULES AND GOVERNANCE PROVISIONS

COLORADO REPUBLICAN PARTY INDEPENDENT EXPENDITURE COMMITTEE

*A Standing Committee and Separate Segregated Fund of the Colorado Republican Committee*

Effective August 8, 2014, the following Standing Rules shall govern and restrict the activities of the Colorado Republican Party Independent Expenditure Committee (hereafter, "IEC"), its officers and members:

9. We are not unaware of the potential abuses—the scourge of so-called "soft money"—the current legislative scheme may allow. But the remedy is with the General Assembly, not the courts. *See Smith v. Exec. Custom Homes, Inc.,* 230 P.3d 1186, 1191 (Colo.2010) ("Where a statute leads to undesirable results, it is up to the General Assembly, not the courts, to determine the remedy."). Indeed, we agree with the Supreme Court that "[m]oney, like water, will always find an outlet." *McConnell v. Fed. Election Comm'n,* 540 U.S. 93, 224, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003), *overruled in part by Citizens United v. Fed. Election Comm'n,* 558 U.S. 310, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010).

RULE 1. The IEC is organized as a standing committee and separate segregated fund of the Colorado Republican Committee, a Colorado unincorporated nonprofit association and political party committee organized under Colorado law and the rules of the Republican Party. The IEC is registered with the Colorado Secretary of State as an "independent expenditure committee" for reporting and compliance purposes pursuant to Colorado Revised Statutes 1–45–107.5 and other applicable provisions of the Fair Campaign Practices Act and Colorado law.

RULE 2. The IEC shall be managed by an executive director and an management committee of not less than three and not more than seven persons, appointed by the State Chairman to a fixed term of not less than one year nor more than three years pursuant to Article V, Section B, paragraph (e) and Article X of the Bylaws of the Colorado Republican State Central Committee.

RULE 3. The State Chairman may only remove the executive director or any member of the independent management committee for cause, such as fraud or malfeasance, upon the recommendation of a majority of the remaining members of the management committee. If the executive director or a member of the management committee resigns or is removed for cause prior to the end of their term, the State Chairman may appoint a replacement to fulfil the remainder of the unexpired term.

RULE 4. The affairs and operations of the IEC shall be managed by the management committee. Notwithstanding the foregoing provision, the management committee may delegate its authority to the executive director or to such officers, managers or authorized agents as it shall seem desirable from time to time in order to effectively and properly carry out the necessary business and operations of the IEC. The delegation thereto of authority shall not operate to relieve the management committee, or any individual member of the management committee, of any responsibility imposed upon it, her, or him by virtue of their office. The management committee shall approve an operations and independent expenditure budget and shall authorize or ratify any and all expenditures in excess of ten thousand dollars or contract obligating such expenditures.

RULE 5. The management or development of any of the plans, projects, activities, or expenditures of the IEC will be conducted independently of any candidate, agent of any candidate, candidate committee, officer, official, staff member or authorized agent of the Colorado Republican Committee, including the State Chairman. In every respect, the IEC will strictly operate within the framework defining "coordination" established by Rule 1.4 of the Rules Concerning Campaign and Political Finance promulgated by the Colorado Secretary of State at 8 CCR § 1505–6, and in accordance with how "contribution" and "independent expenditure" are defined in Art. XXVIII, §§ 2(5) and (9) of the Colorado Constitution and applied under relevant provisions of Colorado law.

RULE 6. Neither the executive director, nor any member of the management committee, shall hold any office or position within the regular political party organization of the Colorado Republican Party during the term of their appointment as executive director or as a member of the management committee.

RULE 7. Neither the executive director, nor any member of the management committee may serve as a delegate to any Republican assembly or convention where any Republican candidate is to be nominated or designated to the primary election ballot. With the exception of participating at a Republican precinct caucus meeting or voting in a Republican primary election, neither the executive director nor members of the management committee may participate in the nomination or designation of any Republican candidate for public office.

RULE 8. The executive director and management committee shall be prohibited from actively participating on the campaign committee or on the finance committee of any candidate for public office that will be the beneficiary of any independent expenditure made by the IEC in the current election cycle.

RULE 9. The executive director and management committee shall not be prohibited

from attending public events and/or fundraising events at which candidates for public office may appear and/or speak, and shall not be prohibited from contributing in their personal capacity to any political party committee, political committee, issue committee, or candidate for public office or an office in a political organization.

RULE 10. The executive director and members of the management committee are expressly prohibited from soliciting or receiving any non-public information from any candidate for state or local public elective office or from any candidate committee or from any agent of such candidate seeking election in the current election cycle regarding that candidate's campaign strategy, plans, projects, activities, or needs. The executive director and members of the management committee are expressly prohibited from consulting with or soliciting or accepting any direction from any candidate for state or local public elective office or from any candidate committee or from any agent of such candidate seeking election in the current election cycle with respect to the development, creation, production or dissemination of any independent expenditure or electioneering communication paid for by the IEC.

RULE 11. The executive director and members of the management committee are expressly prohibited from soliciting or receiving any non-public information concerning the campaign strategy, plans, projects, activities, or needs of the Colorado Republican Committee or of any political party committee affiliated with the Colorado Republican Committee at the county, district, or local level. The executive director and members of the management committee are expressly prohibited from consulting with or soliciting or accepting any direction from any officer, agent or committee of any political party committee affiliated with the Colorado Republican Committee with respect to the development, creation, production or dissemination of any independent expenditure or electioneering communication paid for by the IEC. Officers, agents and committees of any political party committee affiliated with the Colorado Republican Committee will be ex-

pressly prohibited from making any such requests or suggestions to the executive director or to any member of the management committee.

RULE 12. The IEC is permitted to accept contributions and expend funds and make independent expenditures and electioneering communications to support and influence the election of Republican candidates for public office or an office in a political organization at the state and local level ONLY, and is prohibited from accepting any contributions or making any expenditures that refer to any candidate for federal office, or are designed or intended to influence the election of any candidate for federal office. The IEC is prohibited from accepting any contributions or making any expenditures that would cause the IEC to be treated as a political committee, issue committee, or as a federal political committee (federal PAC) under applicable Colorado or federal law.

RULE 13. With the exception of an attorney, accountant, or bookkeeper who may provide services within the scope of his or her profession, the IEC will not retain or utilize any common consultant or common vendor with the Colorado Republican Committee or with any Republican candidate for public office that will be the beneficiary of any expenditure by the IEC, unless the common consultant or common vendor places effective barriers (i.e., "firewalls") to prevent the transmission of non-public information between the IEC and the Colorado Republican Committee and any and all Republican candidates or candidate committees.

RULE 14. Contributions to the IEC will be solicited from legal entities and persons that are permitted to contribute to independent expenditure committees under Colorado law. Contributions will be solicited by the executive director of the IEC and by other authorized agents of the IEC, including professional fundraisers and fundraising consultants. Contributions to the IEC will also be solicited by the State Chairman and by other authorized agents or representatives of the Colorado Republican Committee.

RULE 15. All contributions and any funds received in response to such solicitations will be deposited into one or more designated

bank accounts at a bank or branch of a bank located in Colorado. While the State Chairman and certain representatives of the Colorado Republican Committee may be authorized to make deposits into the IEC account and view current account balances for auditing and compliance purposes, the only persons authorized to sign checks, authorize transfers, or obligate or expend any funds of the IEC shall be the executive director and one or more members of the management committee or their designated and authorized agents.

RULE 16. In addition to any other applicable requirements provided by law, any communication that is broadcast, printed, mailed, delivered, or otherwise circulated by the IEC that constitutes an independent expenditure shall include in the communication a statement that the communication has been "Paid for by the Colorado Republican Party Independent Expenditure Committee" and shall satisfy all applicable requirements promulgated by the Colorado secretary of state and/or the federal communications commission for size, duration, and placement of the disclaimer.

RULE 17. The IEC will fully comply with all disclosure and reporting requirements mandated by C.R.S. § 1-45-107.5 and other applicable provisions of Colorado campaign finance law, and will assist donors to the IEC to fulfill their reporting requirements under the independent expenditure statute. At the request of any contributor to the IEC, the IEC and/or any of members, officers and agents may be appointed to serve as an agent of such contributor to file the necessary reports to disclose the donation to the Colorado secretary of state as required under C.R.S. § 1-45-107.5(9)(a) on behalf of such contributor.

RULE 18. The IEC will abide by the requirement of pre-primary neutrality set forth in Article III, Section C of the CRC Bylaws which provides that "No candidate for any designation or nomination for partisan public office shall be endorsed, supported, or opposed by the CRC, acting as an entity, or by its state officers or committees, before the Primary Election, unless such candidate is unopposed in the Primary Election."

RULE 19. The rules in the current edition of *Robert's Rules of Order, Newly Revised* shall govern the IEC in all cases to which they are applicable and not inconsistent with these Standing Rules, any special rules of order adopted by the management committee, the Bylaws of the Colorado Republican State Central Committee or the laws of the State of Colorado. Should any provision of these Standing Rules be in conflict with any provision of the Bylaws of the Colorado Republican State Central Committee, with any local, state, or federal law, or with any rule of the Republican National Committee, then the portion in conflict shall be deemed inoperative and ineffective to the extent of such prohibition without invalidating any of the other provision or portions thereof.