COLORADO COURT OF APPEALS                                         **2017COA32**

Court of Appeals No. 16CA0140
Office of Administrative Courts Case No. OS 2015-0020

Campaign Integrity Watchdog LLC,

Petitioner-Appellant,

v.

Colorado Republican Party Independent Expenditure Committee,

Respondent-Appellee,

and

Colorado Secretary of State,

Intervenor-Appellee,

and

Office of Administrative Courts,

Appellee.

_____

ORDER AFFIRMED

Division I
Opinion by JUDGE NAVARRO
Taubman and Graham, JJ., concur

Announced March 9, 2017

_____

Matthew Arnold, Authorized Representative, Denver, Colorado, of Campaign
Integrity Watchdog

Brownstein Hyatt Farber Schreck, LLP, Christopher O. Murray, David B.
Meschke, Denver, Colorado, for Respondent-Appellee

Cynthia H. Coffman, Attorney General, Matthew D. Grove, Assistant Solicitor General, Denver, Colorado, for Intervenor-Appellee

No Appearance for Appellee

¶ 1    Campaign Integrity Watchdog LLC (CIW) alleges that the Colorado Republican Party Independent Expenditure Committee (CORE) violated various campaign finance laws.  An administrative law judge (ALJ) dismissed CIW's claims.  CIW appeals, but we affirm the ALJ's order.  In doing so, we hold that the applicable campaign finance provisions do not require an independent expenditure committee (IEC) to disclose a donation unless the donation was given for the purpose of making an independent expenditure.

I.    Factual and Procedural History

¶ 2    According to CIW's complaint, its claims stem from two earlier campaign finance proceedings against CORE, both initiated by CIW and resolved by an ALJ.  In the first case, an ALJ penalized CORE in the amount of $200.  In the second case, an ALJ imposed a $600 aggregate penalty and an award of $255 in costs.  The Colorado Republican Party paid these penalties and costs on CORE's behalf.  CORE did not disclose these payments in its periodic campaign finance disclosure reports.  Around the same time, a private person paid $50,000 to a law firm to settle CORE's legal expenses.  CORE disclosed this payment as a "contribution" in its periodic campaign finance disclosure report.

1

¶ 3    CIW filed a complaint alleging that CORE did not comply with the disclosure requirements of article XXVIII of the Colorado Constitution, the Fair Campaign Practices Act (FCPA), §§ 1-45-101 to -118, C.R.S. 2016, and the Colorado Secretary of State's Rules Concerning Campaign and Political Finance.  CIW maintained that CORE should have disclosed as "donations" or "contributions" the payments made by the Colorado Republican Party and that CORE should have disclosed as "expenditures" all the payments.

¶ 4    CORE moved to dismiss the complaint.  The Colorado Secretary of State moved to intervene as a respondent and filed his own motion to dismiss.  The ALJ permitted the Secretary to intervene for a limited purpose and considered his motion as an "amicus-style brief."

¶ 5    The ALJ dismissed CIW's complaint under C.R.C.P. 12(b)(5) for failure to state a claim upon which relief could be granted.  The ALJ decided as follows:

- CORE, as an IEC, was not required to report as "donations" the payments made on its behalf by the Colorado Republican Party because they were made for the purpose of satisfying

CORE's fines and costs, not for the purpose of making an independent expenditure.

- CORE was not required to report as "contributions" the payments made on its behalf by the Colorado Republican Party because the statute requiring disclosure of contributions does not apply to an IEC.

- CORE was not required to report as "expenditures" the payments made on its behalf by the Colorado Republican Party and the private person because the payments were for fines, costs, and legal services, not for express advocacy.

¶ 6    CIW appeals.  Both CORE and the Secretary have filed answer briefs defending the ALJ's decision.

## II.    Analysis

¶ 7    As it asserted in the administrative proceedings, CIW contends on appeal that CORE was required to report some of the subject payments as "donations" or "contributions" and to report all the payments as "expenditures."  CIW is mistaken.

¶ 8    First, even if we assume that some payments constituted donations under the applicable statutory definition, CORE was not required to report them because the statute does not require an IEC

to report donations unless they were made for the purpose of an independent expenditure (and they were not here). Second, the law requiring some entities to report contributions does not apply to an IEC. Third, although the law requires an IEC to disclose certain information after making some expenditures, the payments here do not qualify as expenditures under the relevant constitutional and statutory definitions. And the broader definition of expenditure set forth in the Secretary's campaign finance rule does not apply to an IEC.

### A. Standard of Review and Interpretive Principles

¶ 9 We review de novo a decision to dismiss a complaint under C.R.C.P. 12(b)(5). *Allen v. Steele*, 252 P.3d 476, 481 (Colo. 2011). We accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Id.*; *see also Warne v. Hall*, 2016 CO 50, ¶¶ 9, 27 (recognizing that a court need not accept as true legal conclusions or conclusory allegations). But "[a] court may not consider information outside the confines of the pleading." *Allen*, 252 P.3d at 481. In addition, we review de novo statutory provisions, constitutional provisions, and an administrative agency's conclusions of law. *Campaign Integrity*

*Watchdog v. Coloradans for a Better Future*, 2016 COA 51, ¶ 16 (*cert. granted* Sept. 12, 2016).

¶ 10     We do not look beyond the plain language of a constitutional or statutory provision if its meaning is clear on its face. *Vigil v. Franklin*, 103 P.3d 322, 327 (Colo. 2004); *see Colo. Republican Party v. Williams*, 2016 COA 26, ¶ 15 ("The rules of construction are essentially the same for constitutional and statutory provisions."). Where a constitutional provision and a statute pertain to the same subject matter, we construe them in harmony. *Williams*, ¶ 15.

### B.     CORE's Status

¶ 11     Because CORE's status informs our analysis, we emphasize that CORE is an IEC as defined by the FCPA and as confirmed by a division of this court. *Id.* at ¶ 34. An IEC is a person or group of persons that makes independent expenditures of over $1000 *or* collects over $1000 from other persons for the purpose of making an independent expenditure. § 1-45-103(11.5), C.R.S. 2016. "Expenditure" means a payment "expressly advocating the election or defeat of a candidate or supporting or opposing a ballot issue or ballot question." Colo. Const. art. XXVIII, § 2(8)(a); § 1-45-103(10). An "independent expenditure" is an expenditure not controlled by or

5

coordinated with any candidate or agent of such candidate. Colo. Const. art. XXVIII, § 2(9); § 1-45-103(11).

¶ 12    To the extent CIW contends in its reply brief that CORE does not qualify as an IEC, we do not consider the contention for two reasons. First, CIW did not assert in its complaint that CORE is not an IEC. As noted, a division of this court has held that CORE is an IEC because its standing rules protect against coordination with the Colorado Republican Party or its candidates, *Williams*, ¶ 34. CIW did not allege in its complaint that CORE had failed to follow its standing rules.[1] Thus, the ALJ did not resolve this question. Second, CIW did not challenge CORE's status as an IEC in its opening brief in this court. *See DeHerrera v. Am. Family Mut. Ins. Co.*, 219 P.3d 346, 352 (Colo. App. 2009) (refusing to consider argument raised for first time in reply brief). On the contrary, CIW seemed to premise its opening brief on the fact that CORE *is* an IEC and then argued that an IEC must make certain disclosures.

---

[1] CIW suggested in its response to the motion to dismiss that CORE might not qualify as an IEC. But CIW did not make such a claim in its complaint. We recognize that CIW filed its complaint before *Colorado Republican Party v. Williams*, 2016 COA 26, was announced. Still, like the ALJ's, our analysis must focus exclusively on the allegations of the complaint at issue here.

¶ 13 As a result, the disclosure requirements applicable to an IEC matter here. Section 1-45-107.5, C.R.S. 2016, applies to an IEC. *See Williams*, ¶ 7. In contrast, section 1-45-108(1)(a)(I), C.R.S. 2016, sets forth disclosure requirements for *other* entities: "candidate committees, political committees, issue committees, small donor committees, and political parties." *See also* Dep't of State Regs. 10.2, 10.3, 8 Code Colo. Regs. 1505-6 (explaining that the disclosure requirements in section 1-45-108(1) apply to all committees "[e]xcept for independent expenditure committees"). The Colorado Constitution does not mention an IEC at all, but the constitution does require any person making an independent expenditure of more than $1000 to disclose certain information about the expenditure. *See* Colo. Const. art. XXVIII, § 5.

¶ 14 Therefore, section 1-45-107.5 and Colorado Constitution article XXVIII, section 5 control this case.

## C. Donations

¶ 15 As relevant here, section 1-45-107.5 requires an IEC to do the following regarding donations:

- Register with the Secretary if it accepts a "donation" over $1000 "that is given *for the purpose of making an independent expenditure.*" § 1-45-107.5(3)(a) (emphasis added).

- Disclose the name and address of any person who "donates" more than $250 in one year "*for the purpose of making an independent expenditure*" if the IEC makes independent expenditures of more than $1000 in one year. § 1-45-107.5(4)(b) (emphasis added).

- Disclose, in accord with the schedule applicable to political committees, any "donation" over $20 given "*for the purpose of making an independent expenditure*" to an IEC making independent expenditures of more than $1000 in one year. § 1-45-107.5(8) (emphasis added).

*See also* Dep't of State Reg. 5.2, 8 Code Colo. Regs. 1505-6 (An IEC "must report donations over twenty dollars given *for the purpose of making an independent expenditure.*") (emphasis added).

¶ 16    "Donation" means:

> (I)    The payment, loan, pledge, gift, or advance of money, or the guarantee of a loan, made to any person *for the purpose of making an independent expenditure*;

(II)   Any payment made to a third party that relates to, and is made for the benefit of, any person that makes an independent expenditure;

(III)   The fair market value of any gift or loan of property that is given to any person *for the purpose of making an independent expenditure*; or

(IV)   Anything of value given, directly or indirectly, to any person *for the purpose of making an independent expenditure*.

§ 1-45-103(7.3)(a) (emphasis added).

¶ 17    CIW relies on the definition of donation in section 1-45-103(7.3)(a)(II) because that definition does not seem to require the donation to be given for the purpose of making an independent expenditure. And CIW correctly observes that the ALJ did not explicitly address this particular aspect of section 1-45-103(7.3)(a)(II).

¶ 18    We need not decide, however, whether the payments here constituted donations under section 1-45-103(7.3)(a)(II). Even if they did, the plain language of section 1-45-107.5 does not require CORE to disclose them unless they were given for the purpose of making an independent expenditure, as the above citations show. But CIW's complaint asserted that the payments were made to

satisfy CORE's administrative penalties and costs. Accepting these allegations as true, we conclude that these payments were not given for the purpose of making an independent expenditure. Indeed, CIW does not suggest they were given for that purpose.

¶ 19     Instead, CIW maintains that the broader disclosure requirements of section 1-45-108(1) apply to an IEC because: (1) section 1-45-107.5(4)(a) begins with the phrase "[i]n addition to any other applicable disclosure requirements specified in this article or in article XXVIII of the state constitution"; and (2) some of the Secretary's online disclosure forms cite section 1-45-108. We disagree for two reasons.

¶ 20     First, while an IEC must comply with other "applicable" constitutional and statutory disclosure requirements, the constitution requires an IEC to disclose information about *expenditures* not donations, and section 1-45-108(1) does not apply to an IEC. *See* Colo. Const. art. XXVIII, art. 5; § 1-45-108(1)(a)(I); Dep't of State Regs. 10.2, 10.3, 8 Code Colo. Regs. 1505-6; *cf.* Colo. Const. art. XXVIII, § 7 ("The disclosure requirements relevant to candidate committees, political committees, issue committees, and political parties, that are currently set forth in section 1-45-108,

10

C.R.S., or any successor section, shall be extended to include small donor committees."). Second, although the Secretary's "Detailed Summary" form cites section 1-45-108 in connection with disclosing monetary itemized donations of $20 or more, the Secretary's more specific "Itemized Donation Statement ($20 or more)" form directs an IEC to "reference section 1-45-107.5 for donation reporting requirements." And the Secretary's separate IEC registration form cites section 1-45-107.5. In any event, the constitution and relevant statutes, not the Secretary's forms, direct our analysis.

¶ 21    For all of these reasons, CORE did not have to disclose the payments at issue as donations.

### D.    Contributions

¶ 22    Section 1-45-107.5 does not require an IEC to disclose a "contribution." This fact makes sense because the definition of contribution does not include payments made to or for the benefit of an IEC. "Contribution" includes payments made to or for the benefit of "any candidate committee, issue committee, political committee, small donor committee, or political party," as well as anything of value given to a candidate to promote the candidate's

11

election.  Colo. Const. art. XXVIII, § 2(5)(a); § 1-45-103(6)(a); *see also* § 1-45-103(6)(c) (expanding "contribution" to include some payments to a "political organization," which is different from an IEC); § 1-45-103(14.5) (defining "political organization").

¶ 23 Consequently, CORE was not required to disclose the payments at issue as contributions.

### E. Expenditures

¶ 24 Article XXVIII, section 5 of the Colorado Constitution, as well as subsections (3)(a), (4)(a), and (6) of section 1-45-107.5, require an IEC to register and to report certain information if it makes an independent expenditure of over $1000 in aggregate in one year.

¶ 25 To repeat, "[e]xpenditure" generally means payments "expressly advocating the election or defeat of a candidate or supporting or opposing a ballot issue or ballot question."  Colo. Const. art. XXVIII, § 2(8)(a); § 1-45-103(10).  As the ALJ found, however, the payments here were not expressly advocating the election or defeat of a candidate or supporting or opposing a ballot issue or ballot question, and so they did not satisfy the general definition of expenditure.

¶ 26    CIW invokes, however, the broader definition of "expenditure" provided by a Secretary rule. *See* Dep't of State Reg. 1.6, 8 Code Colo. Regs. 1505-6. But that rule applies to expenditures and obligations "as used in section 1-45-108(1)(a)(I)," and section 1-45-108(1)(a)(I) does not apply to an IEC, as we have explained. *Id.*

¶ 27    Accordingly, CIW was not required to report the payments as expenditures.

## III.    Other Contentions

¶ 28    Because we have concluded that CORE was not required to disclose the payments, we need not address CORE's objections to disclosure based on the First Amendment and *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010).

## IV.    CIW's Request for Costs

¶ 29    CIW requests "sanctions and costs" against CORE under C.A.R. 39 and C.A.R. 39.1 (formerly C.A.R. 39.5). Because we rule in favor of CORE, we deny CIW's request for appellate costs and sanctions. *See* C.A.R. 39(a).

## V.    Conclusion

¶ 30    The order of dismissal is affirmed.

JUDGE TAUBMAN and JUDGE GRAHAM concur.

13